A92A0017. DEROSA v. SHIAH et al.
(421 SE2d 718)

COOPER, Judge.

Appellant appeals from the trial court's grant of appellees' motions for summary judgment.

In March 1989, appellant accepted an offer of employment with appellee Stratus Petroleum Corporation ("Stratus"). The terms of appellant's employment with Stratus were reflected in two documents in which appellant was guaranteed two years of employment at a salary of $85,000 per year plus various corporate benefits. In the fall of 1989, appellant became aware of negotiations between Stratus and appellee Louis Dreyfus Energy Corporation ("Dreyfus") for the takeover of Stratus' operations. Appellant approached appellee Thomas Shiah ("Shiah"), the president of Stratus, to discuss the rumored takeover and appellant's employment. In January 1990, Stratus and Dreyfus reached an agreement in the form of a lease of the operating assets of Stratus to Dreyfus. A comprehensive Operating Lease Agreement ("Lease Agreement") was executed by Stratus and Dreyfus to effect their agreement. Beginning February 1, 1990, appellant was employed by Dreyfus, at the same salary and with the same benefits as were provided by Stratus. On March 14, 1990, appellant was notified that he was being terminated by Dreyfus, effective the next day. Severance pay for 30 work days was wired into appellant's bank account. Appellant filed a complaint against appellees, alleging breach of contract by both Stratus and Dreyfus in their failure to honor the terms of his original employment contract with Stratus. Appellant also made an allegation of intentional interference with contract against Dreyfus. After a hearing on appellees' motions for summary judgment, the trial court issued an order which, without explanation, granted the motions.

1. Appellant first argues that the trial court erred in granting summary judgment on the breach of contract claim against Dreyfus. Appellant argues that, pursuant to the terms of the lease agreement, his employment contract was assigned to, and assumed by, Dreyfus and that Dreyfus breached the contract by terminating him without cause. Appellees respond that the lease agreement does not render Dreyfus liable under appellant's employment contract with Stratus; that the lease agreement only provided that Dreyfus shall employ appellant; that appellant accepted employment with Dreyfus under new terms as an employee at will without a written contract; and that, in any event, there was an accord and satisfaction between Dreyfus and

appellant as to their respective obligations when appellant accepted severance pay from Dreyfus.

The clarity and meaning of the terms of the lease agreement are central to the determination of whether appellant's employment contract was assigned to, and assumed by, Dreyfus. Although the trial court's order does not specify the analysis employed by the court in reaching its decision, we will assume that the court proceeded in accordance with the steps required of a trial court for construction of a contract. " 'There are three steps in the process of contract construction. The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction (OCGA § 13-2-2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity. [Cit.]' [Cit.]" (Citations omitted.) *Copy Systems of Savannah v. Page*, 197 Ga. App. 435, 436 (398 SE2d 784) (1990).

Section 6.1 (a) of the lease agreement provides that Dreyfus "shall employ and be responsible for each person whose name appears on Schedule 1.4 and who does not refuse employment. . . ('Terminal Employees')." Appellant's name appears on Schedule 1.4. Section 6.4 states that Dreyfus "shall assume and be responsible for all of the Benefit Arrangements covering nonunion Terminal Employees. . . ." Section 6.7 (a) defines "Benefit Arrangements" specifically as including all employment contracts listed on Schedule 6.7 (a). Schedule 6.7 (a) lists under "employment, labor and collective bargaining agreements" the employment agreement between Stratus and appellant. Also, Section 6.7 (h) states that "[n]either the execution and delivery of this Lease nor the consummation of the transactions contemplated herein will terminate or modify, or give a third party a right to terminate or modify, the provisions or terms of any Benefit Arrangement . . . ." Further, Shiah testified that in his opinion appellant's contract was an obligation of Dreyfus under the lease agreement. In contrast to these lease agreement provisions which arguably support appellant's contention that his contract was assumed by Dreyfus, Section 6.8 of the lease agreement disclaims responsibility for contracts specifying employment duration, and provides that "[n]otwithstanding the foregoing, nothing express or implied in this Lease is intended to confer upon any member or former member of the SPC Employees, the Terminal Employees or the Existing Lessee Employees any rights or remedies (including any rights of employment for any specified period of time), nor shall [any such member or former member] . . . be considered to be a third party beneficiary to this Lease." Appellees further emphasize that Section 6.1 only requires Dreyfus to offer employment but does not impose any liability on Dreyfus for pre-existing employment contracts. Appellees also cite

the last paragraph of Section 6.4 which states that Dreyfus is not obligated to provide any specific level of benefits after January 1, 1990 and can amend, terminate or modify benefits thereafter. We conclude that an ambiguity exists on the issue of whether Dreyfus assumed liability under appellant's employment contract with Stratus based on the language of Sections 6.4, 6.7 (a) and 6.7 (h) of the lease agreement, on the one hand, and the language of Section 6.8, on the other hand. Even after applying the applicable rules of construction, the ambiguity remains. See *Karlan, Inc. v. King*, 202 Ga. App. 713 (415 SE2d 319) (1992). The intent of the parties to the lease agreement with respect to the assumption of appellant's employment contract is " 'an evidentiary, factual matter for resolution by the jury and not a matter of law for determination by the court.' " *Prince v. Kujawa*, 178 Ga. App. 828 (1) (344 SE2d 680) (1986). Because of the ambiguity of the lease agreement, the grant of summary judgment was in error.

The grant of summary judgment to appellees on the issue of an accord and satisfaction between appellant and Dreyfus was also in error. "Accord and satisfaction occurs where the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the latter agreement has been executed." OCGA § 13-4-101. "Like any other contract, accord and satisfaction requires a meeting of the minds as to the subject matter embraced therein, if it is to be valid and binding. [Cits.] Where there is no agreement to settle all matters in dispute, no accord and satisfaction result. [Cits.]" *Wallace v. Harrison*, 166 Ga. App. 461 (2) (304 SE2d 487) (1983). Furthermore, " '[a]s a general rule, whether there is accord and satisfaction is a question for the jury. (Cit.)' [Cit.]" *Pierce v. Taylor*, 190 Ga. App. 819 (2) (380 SE2d 351) (1989). Appellees contend that appellant's acceptance of the severance pay offered by Dreyfus and appellant's choice to accept continuation of health insurance benefits are conclusive of an accord and satisfaction between the parties. We disagree. Although appellees produced evidence that appellant responded to the notice of his severance pay by stating, "that's fair," this is not sufficient to show a meeting of the minds on accord and satisfaction. In fact, appellant states in his affidavit that he never negotiated the amount of severance pay with Dreyfus; that the company simply told him how much he would receive; that he never discussed with Dreyfus whether the severance pay was in satisfaction of any other claims he had; that he never intended the severance pay to release Dreyfus or Stratus from their obligations under his employment contract; that he never signed any document releasing any claims he had; and that he never intended the severance pay to be in satisfaction of any other claims he may have. The record shows that the separation notice given to appellant at the time of his termination from Dreyfus says nothing about the satisfaction of any other claims of ap-

pellant. Deposition testimony reveals that Dreyfus had no explanation for the amount of severance pay given to appellant but that it was a discretionary amount. The money was wired into appellant's account; appellant never endorsed a check for the amount or signed any other document indicating his intent with respect to the purpose of the severance pay. "The existence vel non of mutual intention is ordinarily a question of fact which is reserved for determination by the jury. [Cits.]" *Mayer v. Turner*, 142 Ga. App. 63 (1) (234 SE2d 853) (1977). Compare *Mobley v. Fulton Roofing Co.*, 173 Ga. App. 563 (1) (327 SE2d 540) (1985). In this case, we determine that a genuine issue of material fact as to the existence of an accord and satisfaction does exist, and this issue should be submitted to a jury. *Mayer*, supra at 64. Therefore, as to appellant's first enumeration of error, the breach of contract claim against Dreyfus, the trial court erred in granting summary judgment to Dreyfus.

2. In his next enumeration, appellant contends that the trial court erred in granting summary judgment on the breach of contract claim against Stratus in which appellant alleged alternatively that if Dreyfus did not assume his contract, then Stratus remained liable thereunder. Stratus responds that there was a novation in the contract with Stratus, and the contract was terminated when appellant voluntarily accepted the same job with Dreyfus. Stratus presented evidence that appellant approached Shiah during the negotiations with Dreyfus, expressed concern about his employment and asked for Shiah's help in maintaining his job security. Appellant stated in his affidavit that Shiah assured appellant that he would protect his interests; that Shiah stated to appellant, "you will always have a job with me"; that he never signed any document releasing Stratus from liability on his employment contract; that, based on Shiah's statements, he believed that Stratus and Dreyfus would continue to both be liable on the contract; that he never consented to a termination or novation of his employment contract; and that he never agreed to become an employee at will with Dreyfus. As with an accord and satisfaction, " '[a] novation. . . is in itself a contract and must have all the elements of a de novo contract. (Cits.) Therefore, there must be a meeting of the minds if the novation . . . is to be valid and binding.' [Cit.] ' "In every novation there are four essential requisites: (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, (4) the validity of the new one. If these essentials, or any one of them, are wanting, there can be no novation." (Cit.)' [Cit.]" *Griffiths v. Phenix Supply Co.*, 192 Ga. App. 651 (1) (385 SE2d 789) (1989). " ' "(M)ere acceptance by the obligee of performance by the assignee, or substituted obligor, of the contract is not sufficient to establish novation in the absence of words or conduct tending to show an intention or agreement on the part of

the obligee to release the original obligor and extinguish his liability." (Cit.)' [Cit.]" *Phillips v. Plymale*, 191 Ga. App. 338, 339 (1) (381 SE2d 580) (1989). Based on the conflicting evidence in the record, we find that there is a genuine issue of material fact as to the intentions of the parties, and appellant's allegations of breach of contract against Stratus should be determined by a jury. See *Mayer*, supra at 64. *Acree v. Kay*, 188 Ga. 783 (4 SE2d 820) (1939), relied on by appellees, is not persuasive in that the court found an agreement among the parties to a novation based on the specific facts of the case. As previously stated, the facts of the instant case present a genuine issue for resolution by a jury. Accordingly, the trial court erred in granting summary judgment to Stratus on the breach of contract claim.

3. Appellant's last enumeration challenges the trial court's grant of summary judgment to Dreyfus on the intentional interference with contract count of the complaint. " 'The intentional and non-privileged interference by a third party with existing contractual rights and relations constitutes a tort for which an action shall lie. (Cits.) Furthermore, the courts of this state have recognized that such interference with a contractual right or relationship need not result in a breach of the contract to be actionable. It is sufficient if the invasion retards the performance of the duties under the contract or makes the performance more difficult or expensive.' [Cit.] Thus, 'it is actionable maliciously and without justification to induce one to break his contract with another to the damage of the latter.' [Cits.] . . . 'The act is malicious when it is done with knowledge of the party's rights and with the intent to interfere with them.' [Cit.] Intent may be proved by circumstantial evidence." (Emphasis and citations omitted.) *Southern Business &c. of Savannah v. Norwest Fin. Leasing*, 194 Ga. App. 253 (3) (390 SE2d 402) (1990). Dreyfus was fully aware of appellant's employment contract with Stratus. Shiah testified that control over Stratus' employees was an important factor to Dreyfus in the lease negotiations. Appellant stated in his affidavit that Shiah told him not to mention his employment contract to Dreyfus because it would only antagonize them. From the evidence in the record, we find that there is a genuine issue of material fact as to the intent of Dreyfus to interfere with the contractual relationship between appellant and Stratus. Id. Summary judgment on this count should not have been granted.

*Judgment reversed. Sognier, C. J., and McMurray, P. J., concur.*

## ON MOTION FOR RECONSIDERATION.

We have considered appellees' motion for reconsideration and adhere to our opinion. With respect to the liability of appellee Stratus discussed in Division 2, however, appellees raise two lines of argument not addressed in the main opinion which will be briefly addressed

here. Appellees argue that, totally apart from the novation question, Stratus' liability under appellant's employment contract terminated when (1) it voluntarily went out of the business for which appellant was hired by leasing its assets to Dreyfus; and/or (2) appellant started to work for Dreyfus. To support the former line of argument, appellees cite *Phillips v. Amoco Oil Co.*, 799 F2d 1464 (11th Cir. 1986), in which the Eleventh Circuit held that, as a matter of Alabama law, the sale of a business excused the breach of a "lifetime" employment contract. Unlike the "lifetime" contract in *Phillips*, however, appellant's employment contract here is for a specified and relatively short period of two years. Under these circumstances, we do not think it unreasonable to hold a company to its obligations under an employment contract, just as it would be held to its obligations under other contracts, despite its voluntary decision to get out of the business for which the obligations were incurred. See, e.g., *Martin v. Star Pub. Co.*, 126 A2d 238 (50 Del. 181) (corporation not excused from performance of agreement to pay money because it voluntarily discontinues its business).

Acceptance of appellees second line of argument, that Stratus' liability under the employment contract terminated when appellant accepted other employment, would undermine the policies favoring mitigation of damages. Nonetheless, appellees argue such a rule is mandated by *Anderson v. Freeman*, 75 Ga. 93 (1886). Appellees' reliance on *Anderson* is misplaced, however. In *Anderson*, the initial employer became a partner in a partnership which took over his business. The new partnership continued to employ the employee, but the employee insisted that the partnership pay him double what the initial employer had paid him. When he refused to work for the new employer for the same wages he had previously been paid, he was discharged; and it was under these circumstances that the court held the employee could not recover from the initial employer. Thus, this second line of argument is also without merit. See *Globe &c. Ins. Co. v. Jones*, 89 NW 580 (129 Mich. 664) (1902) (" 'When a person contracts to work for another for a term, . . . the master cannot shift his liability by turning the servant over to another master before the term is ended. . . .' [Cits.]"). Stratus' liability terminated only if there was a novation, and, for the reasons discussed in Division 2, whether there was a novation is a question of fact precluding summary judgment.

*Motion for reconsideration denied.*

DECIDED JUNE 8, 1992 —
RECONSIDERATION DENIED JULY 23, 1992 —

*Richard R. Thomas,* for appellant.
*Stowers, Hayes, Clark & Roane, Fred G. Stowers, E. Hearst*

*Roane, Jr., H. Fred Gober,* for appellees.

