## A96A1738. KING INDUSTRIAL REALTY, INC. v. RICH.
### (481 SE2d 861)

SMITH, Judge.

Jack Rich brought suit against King Industrial Realty, Inc., an industrial real estate brokerage firm where he worked as an agent until his termination in 1989. Rich's complaint alleged breach of his agency contract in several respects and sought reformation of the contract to correct a typographical error pertaining to bonuses. Rich also sought costs and attorney fees on the ground that King Industrial acted in bad faith and was stubbornly litigious. Cross-motions for summary judgment were filed, and this appeal by King Industrial is from several of the trial court's rulings on the motions. We affirm.

As an agent, Rich's relationship with King Industrial was governed by three written documents: an agency contract, a company policy, and a 1986 memorandum regarding the calculation of bonuses. The agency contract, executed in 1984, had an initial term of 12 months, and it was automatically renewed at the end of each succeeding 12-month period. The contract further provided for termination for cause at any time upon seven days' notice. Under the contract, Rich was compensated for his services by a commission and bonuses: he would receive 50 percent of the commission paid to King Industrial on the sale or lease of property less any listing fees or commissions paid to outside agents. Commissions were not to end upon Rich's death or termination, but they were to be reduced from 50 percent to 40 percent. A year-end bonus was payable if certain conditions were met: At the end of each year, the agent received a bonus of 60 percent of the amount by which one-half the agent's annual commissions exceeded a sum comprised of his "desk costs" plus a "man-

agement fee" of $15,000.[1]

King Industrial appeals from the trial court's grant of Rich's motion as to two counts of Rich's complaint and from the trial court's denial of its own motion for summary judgment on Rich's claim for costs and attorney fees for bad faith and stubborn litigiousness.[2]

1. Rich's motion to dismiss the appeal is denied.

2. King Industrial contends the trial court erred in ruling that King failed to give Rich seven days' notice, which was required by the agency contract. We do not agree.

The company policy provision does not mention a specific time period for notice of termination, but provides that the relationship may be terminated "upon notice." The more specific provision in the agency contract specifies the time period within which notice must be given before termination. Seven days' notice is required. Contrary to King Industrial's argument, these provisions regarding notice do not conflict and thereby create a jury issue. The provision in the company policy is simply general, while the provision in the agency contract is more detailed.

King Industrial admits that seven days' notice was not actually given. It argues, however, that Rich actually had much longer notice of his termination. Rich was terminated for cause, and over a considerable period of time before he was terminated, he had received various warnings, reprimands, and even a suspension because of his behavior. But these precursors of his termination did not constitute notice of termination in compliance with the contract, as urged by King. They were warnings, perhaps, that his behavior was unacceptable, and that if it continued he *could be* terminated; they were not notice that he actually *was* being terminated.

3. King Industrial asserts the trial court erred in ruling that it breached the agency contract by reducing Rich's commissions paid after he was terminated. We do not agree. Because King Industrial breached the contract itself by failing to give the required seven days' notice before terminating Rich, King Industrial could not invoke the commission reduction provision of the same contract.

In *Burritt v. Media Mktg. Svcs.*, 204 Ga. App. 848-850 (3) (420

---

[1] "Desk costs" at King Industrial are the agent's share of operating expenses. The "management fee" is simply a flat fee imposed by King Industrial that presumably covers expertise and good will.

[2] The parties agreed that the contract should be reformed by correcting the typographical error, and that count of the complaint is not in issue here. The trial court also granted partial summary judgment to King as to its refusal to pay Rich a commission on the sale of a particular piece of property. Rich does not appeal from that ruling. Although King claims in its brief that it is appealing from the trial court's denial of its motion for summary judgment on Rich's claims for refund of his contributions to King's "Risk Management Fund," it is not enumerated as error, and King's briefs include no argument or citations of authority on this ruling.

SE2d 792) (1992), relied upon by the trial court, this Court held that an employer who terminated a commissioned salesperson without the seven-day written notice to which she was contractually entitled committed an actionable breach of contract. Id. at 848 (2). We characterized the failure to pay earned commissions as a forfeiture and cited the principle that under Georgia law, forfeitures are not favored. We held that the employer breached the contract in a fundamental respect by failing to give the required notice, and it therefore had no right to insist upon another provision in the contract whereby the employee's already earned commissions were forfeited on any sales for which payment was not received within ten days after discharge. Id. at 848-850 (3). The principles enunciated in *Burritt* are equally applicable here.

We find no merit in any of the several arguments King Industrial makes in support of its contention that the trial court erred in its ruling on this issue or in its reliance upon *Burritt*. King Industrial argues that the trial court erred in construing the notice provision as a condition subsequent and by concluding that reducing the commissions worked a forfeiture. Georgia law favors conditions subsequent rather than precedent and favors remediation by damages rather than forfeiture. *Fulton County v. Collum Properties*, 193 Ga. App. 774, 775 (388 SE2d 916) (1989). Regardless of whether the commission reduction provision is a condition subsequent or a covenant of the contract, reducing Rich's already earned commissions is obviously a forfeiture. Although factual differences exist between *Burritt* and this case, it is immaterial that the provision in this case, unlike that in *Burritt*, also provides for *payment* of a portion of the earned commissions. It also provides for the *forfeiture* of another portion. Although it may be true, as argued by King Industrial, that certain administrative expenses were associated with leases generating residual commissions, those expenses existed regardless of whether Rich was terminated.

Finally, even if we accept King Industrial's arguments involving the agency contract, summary judgment on this issue would have been right for a different reason. The Company Policy document provides that Rich's "association with [King Industrial] may be terminated by either party at any time upon notice given to the other; but the rights of the parties to any fees which accrued prior to said notice shall not be divested by the termination of this arrangement." This provision must be construed against King Industrial, as the drafter. OCGA § 13-2-2 (5). Construing it against the drafter and against forfeiture, it is apparent that the trial court's ruling is correct. A ruling right for any reason must be affirmed. *Thornton v. Ware County Hosp. Auth.*, 215 Ga. App. 276, 280 (450 SE2d 260) (1994).

4. King Industrial raised the defense of accord and satisfaction

below as to Rich's allegation that it breached the agency contract by reducing his commissions and by failing to pay him certain bonuses. The trial court entered summary judgment in favor of Rich without addressing the accord and satisfaction defense. King Industrial argues that the entry of summary judgment on these counts was an implicit ruling that no such accord and satisfaction existed and that this ruling was therefore error.

The record shows that King Industrial informed Rich by memorandum in July 1989 that he was terminated and that reduced commissions would be paid starting in September 1989. In a responding memorandum, Rich disputed the reduction of his commissions and stated his understanding that he was also entitled to earned bonuses. King Industrial again responded, quoting the applicable provisions of the agency contract in support of its position. Rich made no further reply, and he eventually negotiated the reduced commission checks.

King Industrial argues that this exchange of memoranda, particularly Rich's failure to respond again to the final King memorandum, indicates that Rich had come to agree with King Industrial's position, and that Rich's eventual negotiation of the reduced checks demonstrates that an accord and satisfaction was effectuated. We do not agree that an accord and satisfaction existed here, and we affirm the trial court's ruling.

As with any contract, establishment of an accord and satisfaction requires a showing that a meeting of the minds took place. If no agreement exists to settle all matters in dispute, no accord and satisfaction results. *Derosa v. Shiah*, 205 Ga. App. 106, 108 (421 SE2d 718) (1992). We cannot agree with King Industrial that either Rich's acceptance of the reduced commission checks or the exchange of memoranda indicates in any way that the parties agreed to settle their dispute about the reduced commissions or Rich's entitlement to the bonus funds; the only agreement evidenced is one to disagree.

OCGA § 13-4-103 (b) provides that acceptance of a check marked "payment in full" or other equivalent condition will constitute an accord and satisfaction if a bona fide dispute exists as to the amount due or the payment is made pursuant to an independent agreement that the payment will satisfy the debt in question. The statute does not provide, however, and we have found no case that provides, that the mere acceptance of a check *unmarked* with conditional language will itself suffice to constitute an accord and satisfaction. Generally, where the evidence is in conflict the issue of whether an accord and satisfaction existed is one for a jury. *Derosa*, supra, for instance, was a dispute between employer and former employee regarding severance pay. In *Derosa*, some evidence was presented that the employee had agreed that the employer's offer was "fair." Id. at 108. We held that this evidence did not itself show a meeting of minds as to all dis-

puted issues, but when coupled with the employee's acceptance of the offered severance checks, it was sufficient to create a jury issue as to the existence of an accord and satisfaction. Id. at 108-109 (1). In this case, however, absolutely no evidence was presented that even suggests an accord and satisfaction, other than acceptance of the reduced checks, and no indication appears that the checks were accepted as payment in full.

King Industrial's reliance upon *Salvatori Corp. v. Rubin*, 159 Ga. App. 369, 373 (3) (283 SE2d 326) (1981), is misplaced. The principle derived from *Salvatori Corp.* is that when a contract is ambiguous, the meaning placed on it by one party and known to be thus understood by the other party at the time is held to be its true meaning. That principle may not be used to establish an accord and satisfaction, and no contractual ambiguity is in issue here.

5. King Industrial asserts the trial court erred in ruling that Rich was entitled to bonuses for both 1988 and 1989.[3]

(a) No dispute exists that the 1988 bonus was owed. King Industrial alleged, however, that Rich's claim for a bonus for that year was time-barred. Rich's claim was brought outside the four-year statute of limitation for oral contracts, see OCGA §§ 9-3-25; 9-3-26, but well within the six-year statute of limitation applicable to simple contracts in writing. OCGA § 9-3-24. The trial court held that the six-year statute of limitation applied and that Rich's claim was not time-barred.

King Industrial argues that this ruling was error because the writing covering the bonus policy is incomplete and certain terms are supplied by an oral agreement. Contracts that are partly written and partly in parol must be considered as in parol and are governed by the four-year statute of limitation applicable to oral contracts. *Plumlee v. Davis*, 221 Ga. App. 848, 852-853 (3) (473 SE2d 510) (1996). According to King Industrial, the timeliness of Rich's claim for the 1988 bonus must be measured against the four-year statute of limitation.

First, we do not agree that the bonus memorandum is "incomplete." The fact that a typographical error resulted in the wrong percentage being inserted into the writing and that it was corrected by agreement of the parties does not make the writing an oral contract. Further, the fact that the document may be ambiguous as to two fine points does not render it an oral contract, as urged by King Industrial; it is simply a written contract subject to judicial construction of

---

[3] Out of an abundance of caution, King enumerates as error a possible ruling by the trial court that post-termination bonuses should be calculated without deducting desk costs and the management fee. We do not read the trial court's order as so ruling and therefore do not address this enumeration.

any ambiguities. *Frates v. Sutherland, Asbill & Brennan,* 164 Ga. App. 243 (296 SE2d 788) (1982), cited by King, is distinguished on its facts. In *Frates,* the letter agreement expressly provided that it did not constitute the entire agreement between the parties, and it detailed only a small portion of the entire agreement. Id. at 246 (1). In the bonus agreement in issue, the writing is detailed and encompassed most, if not all, of the agreement between the parties.

Second, King Industrial routinely paid the bonuses in issue during the latter part of the year following the bonus year. Rich's "desk costs" for 1988 were not determined until July 1989, and they were needed to calculate the 1988 bonus. The contract was not breached in this respect, therefore, until after July 1989. Even if we found an oral contract, the four-year statute of limitation had not expired when this action was filed in July 1993.

(b) The trial court determined that Rich was entitled to bonuses after his termination, concluding that "[t]here is no indication in the bonus memorandum or any other agreement between the parties that the payment of any bonus earned is predicated upon [Rich] being an active agent with [King Industrial]. The bonus memorandum addresses King Industrial's "year-end bonus policy" and contains the following language: "If, at the end of the year, the [commission] agent receives is more than his prorata share of the desk cost + a $15,000 annual management fee, then agent will be reimbursed a figure computed by multiplying [60%][4] X the amount above desk cost + $15,000.00." King Industrial maintains that this language reflects an intention to pay bonuses only to agents who were with it at the end of the year.

We agree with the trial court and with Rich that the language does not support this conclusion. Although their meaning may be ambiguous, we conclude that the terms "year-end" and "end of the year" do not represent conditions or qualifications for a bonus, but merely identify the time at which the bonuses would be calculated. The bonus is simply additional commission; it is calculated based upon prior sales and leases. It has already been earned by the time it is calculated. The memorandum does not expressly provide for a forfeiture of that bonus if the agent is not with King at the time it is calculated. And we may not *imply* such a forfeiture. "[T]he settled public policy of this state is that forfeitures are not favored. While forfeitures are not unlawful, the law does not favor them, and all ambiguities in a contract are to be resolved against their existence." (Citations and punctuation omitted.) *APAC-Georgia, Inc. v. Dept. of*

---

[4] The percentage in the memorandum was inadvertently stated as 28%. King Industrial agreed that this was a typographical error.

*Transp.*, 221 Ga. App. 604, 605 (1) (472 SE2d 97) (1996).

6. King Industrial challenges the trial court's denial of its motion for summary judgment on Rich's claim for litigation expenses pursuant to OCGA § 13-6-11. The trial court ruled that at the very least, a jury question exists with respect to King Industrial's liability for costs and attorney fees attributable to its failure to pay Rich's 1988 bonus.

King Industrial's argument that the trial court erred in so ruling because in fact Rich was not entitled to the 1988 bonus is rendered moot by our holdings in Division 4, supra. King Industrial also argues that the trial court should have ruled as a matter of law that none of its actions exhibited bad faith or stubborn litigiousness.

OCGA § 13-6-11 allows recovery of litigation expenses when a defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. With respect to bad faith, the elements of bad faith that will support a claim for expenses of litigation must relate to King's acts in the transaction itself prior to this litigation, not to the motive with which it defended the litigation. *Kemira, Inc. v. Williams Investigative &c. Svcs.*, 215 Ga. App. 194, 200 (3) (450 SE2d 427) (1994). A recovery for stubborn litigiousness or causing unnecessary trouble and expense is authorized if no bona fide controversy or dispute existed as to the defendant's liability. Whether such a controversy existed is a question for the jury. *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 542 (3) (466 SE2d 27) (1995).

It is undisputed that King Industrial acknowledged during this litigation that it had not paid Rich a 1988 bonus, despite its prior insistence that the bonus had been paid. Although Rich did not demand payment of this bonus before filing this action, a dispute existed about his entitlement to the bonus and whether it had been paid. We do not agree with King Industrial, however, that the dispute was bona fide. King Industrial's position, until faced with Rich's motion for summary judgment on this issue, was that the bonus had been paid. King Industrial admitted, in response to Rich's motion for summary judgment, "[a]fter an exhaustive audit and analysis" of its own financial records, that Rich had *not* been paid the 1988 bonus, but it continued to dispute the amount due and the timeliness of the claim.

Based upon this evidence, we agree with the trial court that a jury issue exists as to a recovery of costs and expenses under OCGA § 13-6-11, particularly — although not necessarily exclusively — with regard to the 1988 bonus.

*Judgment affirmed. Andrews, C. J., and Senior Appellate Judge Harold R. Banke concur.*

Decided February 14, 1997.

*Schreeder, Wheeler & Flint, Steven G. Hill, James C. Morton,* for appellant.

*Morris, Manning & Martin, Lewis E. Hassett, Hassett, Cohen, Beitchman & Goldstein, Robert W. Hassett,* for appellee.