A98A1398. RODRIGUEZ et al. v. MIRANDA.

(507 SE2d 789)

BEASLEY, Judge.

Antonio Miranda, M.D., sued Martin Rodriguez, M.D., and Southern Medical Clinics, P.A. d/b/a Corporate Center Clinic (CCC),[1] complaining of breach of an employment agreement and seeking to recover compensation allegedly owed under its clause four.

As of January 1, 1986, Dr. Miranda and CCC, by its president/ shareholder Dr. Rodriguez, entered into the agreement prepared by Dr. Rodriguez for Dr. Miranda's employment by CCC as a physician. Compensation is set forth in clauses one and four. In clause one the parties established a base salary of $108,000 divided into 12 installments of $9,000 per month. In clause four the parties agreed that to the extent the gross income of CCC exceeded $525,000 for the calen-

---

[1] Although the principal defendant is the legal entity "Southern Medical Clinics, P.A.", we refer to defendant as Corporate Center Clinic because the parties do.

dar year, Dr. Miranda would receive 40 percent.

Clause two gave Dr. Miranda one calendar month of vacation with full salary, and clause four provided that any extra time taken off work for any reason would be deducted from his base salary. Clause five specified that he would not participate in the clause four income-sharing during any extra time off and that the percentage would be prorated according to the days he did not work.

Under clause six, the contract was valid for one year. But clause seven provided that the contract could be "declared null and void or canceled by either party at any time during the year without reason or previous notice, effective immediately." The words "effective immediately" were inserted into the typewritten contract by an initialed handwritten notation.

At the beginning of 1987, the parties orally agreed to the written terms of the 1986 employment agreement for the calendar year 1987. Although (as found by the trial court) Dr. Miranda had fulfilled his employment duties and was not in breach of contract, Dr. Rodriguez, acting on behalf of CCC, terminated his employment as a CCC physician on July 31, 1987.

Later that year, Dr. Miranda filed an action seeking payment of 1986 and 1987 clause four "bonus" compensation. That complaint was dismissed without prejudice for want of prosecution, but Dr. Miranda filed again in 1991. Settlement was reached regarding the 1986 bonus.

The parties filed cross-motions for partial summary judgment on the issue of liability for the 1987 bonus. In 1992, the court granted plaintiff's motion and denied defendants'. The court determined that it was the intention of the parties that the plaintiff receive prorated bonus compensation for 1987 for the time he was employed. Using the formula in *General Gas Corp. v. Carn*,[2] the court ruled that the bonus would be calculated by multiplying 7/12 (the portion of the year plaintiff was employed by CCC) times 40 percent (the percentage bonus compensation agreed to by the parties) times the amount of gross income earned by CCC above $525,000 during the 1987 calendar year. Discovery was held open so the parties could determine the amount of gross income of CCC during the relevant time period.

In 1995, Miranda sought partial summary judgment in the amount of $48,891.51 plus prejudgment interest for bonus compensation owed for 1987 in accordance with the formula in the 1992 order and the amount of CCC's gross income for the year as determined through discovery, $734,547.

In 1998, the court by order ruled that defendants are liable for

---

[2] 103 Ga. App. 542, 546 (2) (120 SE2d 156) (1961).

the amount sought by plaintiff, that this amount constitutes liquidated damages, and that plaintiff is entitled to prejudgment interest beginning January 1, 1988 in an amount to be determined.

1. Defendants fault the court's grant of Dr. Miranda's motions for partial summary judgment on liability and damage issues, its denial of their motion for partial summary judgment on liability, and its construction of the employment agreement.

"There are three steps in contract construction: the trial court must first decide whether the contract language is unambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction; and if an ambiguity still remains, the jury must then resolve the ambiguity. [Cit.]"[3] An ambiguous contract is construed most strongly against its maker, but the cardinal rule of contract construction is to ascertain the intention of the parties.[4]

Defendants argue that since CCC exercised its contractual right of declaring the employment contract null and void prior to termination of the calendar year, any promise to pay a bonus likewise became null and void. They further maintain that where, as here, a contract becomes null and void by its terms, a party cannot thereafter legally enforce an executory promise conditioned upon a future event. As authority in support of their arguments, defendants rely on the "general rule" that a hiring indefinite as to time is terminable at the will of either party and creates no executory obligation.[5]

This rule was first articulated in *Lowe v. Royal Crown Cola Co.*,[6] in which the parties had entered into an employment contract terminable at will. The employee was forced to tender his resignation several days before expiration of the first year of employment as a result of the employer's dissatisfaction with job performance. Approximately two months later, he sought to exercise his rights under a stock option agreement.

This court applied the general rule and held that the company properly terminated plaintiff's employment. The court next turned to plaintiff's assertion that he had the right to exercise his option under a provision in the agreement which required the option to be exercised within three months of plaintiff's termination of employment. But plaintiff did not have the right to exercise the option because of another provision stating that it could not be exercised unless and until the employee had remained in the continuous employ of the

---

[3] *Century 21 Pinetree Properties v. Cason*, 220 Ga. App. 355, 358 (2) (d) (469 SE2d 458) (1996).

[4] *Hunsinger v. Lockheed Corp.*, 192 Ga. App. 781, 783-784 (1) (386 SE2d 537) (1989).

[5] *E. D. Lacey Mills v. Keith*, 183 Ga. App. 357, 360 (3) (359 SE2d 148) (1987) (cited in *Arby's, Inc. v. Cooper*, 265 Ga. 240, 242 (454 SE2d 488) (1995)); see *Brunson v. C. B. A., Inc.*, 189 Ga. App. 621, 622 (1) (376 SE2d 706) (1988).

[6] 132 Ga. App. 37, 40-41 (1) (207 SE2d 620) (1974).

company for 12 months.

The court in *Lowe* thus determined that the executory obligation was unenforceable because it was conditioned on a prior event that failed to occur, not because the plaintiff's at-will employment had been terminated. The trial court's grant of the employers' motions for summary judgment was affirmed.

In contrast, the employee was entitled to summary judgment in *General Gas Corp. v. Carn.*[7] Carn's employment contract expressly provided that the employee was to receive 15 percent of corporate net profits over and above $40,000 for the year 1959 and that he was to be paid this percentage either at the end of the year or at the time of termination of his services. This percentage was to be paid only on net profits earned during his term of employment. The evidence showed that the employee terminated his employment on April 1 and that net profits totaled $90,296.28 for the year. This Court held that the employee was entitled to one-fourth of 15 percent of $50,296.28, and to prejudgment interest beginning January 1 of the following year.

In *King Industrial Realty v. Rich,*[8] the brokerage firm (King) compensated its agent Rich for his services by commissions on the sale or lease of property, as well as year-end bonuses. Rich's relationship with King was governed by a set of documents which included an agency contract and bonus memorandum. Under the agency contract, commissions were not to end upon Rich's death or termination but were subject to a percentage reduction. The bonus memorandum addressed King's "year-end" bonus policy and provided that if, at the "end of the year," the commissions the agent received were more than his pro rata share of the company's operating expenses plus a management fee, he would be reimbursed according to a prescribed formula.

Rich was discharged under a provision in the agency contract authorizing termination for cause at any time upon seven days' notice. The trial court ruled that Rich was entitled to bonuses after his termination because there was no indication in the bonus memorandum or any of the parties' other agreements that payment of a bonus was predicated upon the agent being employed by the firm at the end of the year.

On appeal, King maintained that the language in the bonus memorandum reflected an intention to pay bonuses only to agents who were with it at year-end. Although we recognized some ambiguity in the terms of the memorandum, we concluded that Rich was

---

[7] Supra.
[8] 224 Ga. App. 629 (481 SE2d 861) (1997).

entitled to the post-termination bonuses under the formula agreed to by the parties. We characterized the bonus as "simply additional commission . . . calculated based upon prior sales and leases . . . [which] . . . ha[d] already been earned by the time it [was] calculated."[9] After noting that the memorandum did not expressly provide for a forfeiture of the bonus if the agent was not with King at the time it was to be calculated, we held that such a forfeiture could not be implied because " '[t]he settled public policy of this state is that forfeitures are not favored . . . and all ambiguities in a contract are to be resolved against their existence.' [Cit.]"[10]

This case is materially similar to and ultimately controlled by *King*. *Lowe* is distinguishable because the agreement here does not expressly require Dr. Miranda to remain in the employ of CCC in order to be entitled to the year-end bonus. Conversely, *General Gas* is distinguishable because the subject agreement does not by its express terms provide that Dr. Miranda remains entitled to the bonus even if his employment is terminated prior to year's end. The agreement could be considered ambiguous on the question of whether Dr. Miranda is entitled to the bonus. As in *King*, the interpretation urged by defendants would result in a forfeiture of Dr. Miranda's right to additional compensation for services previously rendered, although based on a financial contingency which has yet to occur (i.e., the establishment of CCC's gross income exceeding $525,000 for the year). In other words, defendants propose a retroactive disentitlement to a share in the income already earned in part by Dr. Miranda's labor. The indeterminability of the bonus due on July 31, 1987, does not eliminate the obligation to pay when the amount is ascertainable, i.e., just after December 31, 1987.

Applying the rule in *King*, any ambiguity is resolved against the existence of a forfeiture. Consequently, CCC's termination of the employment agreement did not invalidate its future obligation to compensate Dr. Miranda for services rendered prior to his termination in accordance with the implicit formula.

2. It necessarily follows that Dr. Miranda is entitled to prorated compensation from CCC under clause four based on the portion of the year he worked, the percentage set by the parties, and the extent to which CCC's 1987 gross income exceeded $525,000.[11] This sum became fixed and certain by mathematical calculations which were or should have been in the possession or knowledge of CCC when 1987 ended. Consequently, the bonus claim qualifies as a liquidated

---

[9] Id. at 634 (5) (b).

[10] Id. at 634-635.

[11] Compare *Arby's, Inc. v. Cooper* (bonus unenforceable because its amount based in part on a future exercise of discretion by the employer).

demand,[12] thereby entitling Dr. Miranda to prejudgment interest under OCGA § 7-4-15.[13] As in *Carn*, supra, the trial court did not err in ruling that such interest began to run at the beginning of the year following which the bonus became due (i.e., January 1, 1988).

3. The court was not authorized to enter judgment against Dr. Rodriguez personally.

Although Dr. Rodriguez signed the parties' agreement without denoting at or under the signature that he was signing in a representative capacity, the agreement plainly states at the outset that it is between CCC, "represented by Dr. Martin Rodriguez," and Dr. Miranda. The substance of the writing shows clearly that Dr. Rodriguez signed in his representative capacity.[14] The parties stipulated that Dr. Rodriguez is the president and shareholder of the defendant professional association.

4. Defendants' final contention is that the court erred in granting Dr. Miranda's motion for partial summary judgment in its 1998 order because it did not direct that Dr. Rodriguez's deposition be unsealed until after the order had been entered. The court stated in the order appealed that it had reviewed the record. Under *General Motors Corp. v. Walker*,[15] no reversible error appears in this regard.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 28, 1998 —
RECONSIDERATION DENIED OCTOBER 19, 1998 —

*Cashin, Morton & Mullins, Harry L. Cashin, Jr., David G. Michell, Fleming & Ray, James M. Sherman*, for appellants.

*Dupree, Johnson & Poole, Hylton B. Dupree, Jr., Rowe & Lawler, William P. Rowe III*, for appellee.

---

[12] See *Tunison v. Tillman Ins. Agency*, 184 Ga. App. 776, 778-779 (4) (362 SE2d 507) (1987) (amount claimed is a liquidated demand if it is susceptible of being made certain in amount by mathematical calculations from factors which are or ought to be in possession or knowledge of the party to be charged).

[13] This statute provides that all liquidated demands where the sum to be paid is fixed or certain bear interest from the time the party shall become liable and bound to pay them.

[14] Compare *Cohen v. Capco Sportswear*, 225 Ga. App. 211 (483 SE2d 634) (1997), and cit.

[15] 244 Ga. 191 (259 SE2d 449) (1979).