A98A1092. TRAVEL PROFESSIONALS INTERNATIONAL, INC. v. ACCESS TRAVEL INCORPORATED.
(508 SE2d 197)

RUFFIN, Judge.

Access Travel Incorporated sued Travel Professionals International, Inc. (TPI) for failure to pay commissions due under a franchise agreement. TPI counterclaimed for breach of contract. The trial court partially granted Access Travel's motion for summary judgment, offsetting certain unpaid franchise fees. TPI appeals, contending the trial court erred in finding that a valid contract existed between the parties. Because this contention is without merit, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

On June 30, 1994, TPI and Access Travel entered into a franchise agreement, pursuant to which Access Travel was authorized to operate a travel agency as a TPI franchisee within a designated geographical area. In connection with the execution of the agreement, Access Travel paid TPI a $2,900 franchise fee. The franchise agreement provided that the maintenance of an office outside the designated area would constitute a default under the agreement and result in the immediate termination thereof. At the time the agreement was entered into, however, Access Travel was already operating a travel agency on Northside Drive, outside its designated territory. This office had been approved by the Airlines Reporting Corporation (ARC), which is necessary for an office to be able to print airline tickets. On October 12, 1994, TPI agreed in writing that Access Travel could maintain the Northside Drive office as a branch office under certain conditions, including (1) that Access

Travel have a home office within the defined territory, and (2) that the Northside Drive office obtain ARC approval as an on-site branch office.

In July 1994, Access Travel opened an office in Sandy Springs, within the territory defined in the agreement. In November, it moved this office to a location on Hildebrand Drive, also within the defined territory, in order to satisfy TPI's request that it move to a more visible location. Access Travel never obtained ARC approval of the Sandy Springs or Hildebrand Drive locations. Although the Northside Drive office had been approved by the ARC as a home office, Access Travel did not apply for ARC approval of such office as an on-site branch office, which use was subject to different rules.

As a franchisee, Access Travel participated in TPI's preferred supplier program, pursuant to which it could earn "override commissions" on travel services sold for certain airlines. Override commissions are additional commissions paid by the airlines to TPI, and TPI agreed to distribute the appropriate amount of such additional commissions to Access Travel. Access Travel earned $13,450 in override commissions for the third and fourth quarters of 1994. However, TPI failed to pay such commissions, claiming that it had a right to offset amounts owed to it by Access Travel under the franchise agreement.

By letter dated March 22, 1995, TPI terminated the franchise agreement because of Access Travel's alleged failure to comply with the parties' agreement regarding the location of its offices, and also because of its failure to pay $2,330.88 in franchise fees. The termination letter stated that TPI would pay all earned override commissions after Access Travel paid the outstanding franchise fees. A week later, Access Travel requested that TPI deduct the outstanding franchise fees from the override commissions due and forward the balance to Access Travel. However, TPI never paid the override commissions to Access Travel.

On March 22, 1996, Access Travel sued TPI for breach of contract and quantum meruit. TPI filed a counterclaim for breach of contract, seeking to recover the unpaid franchise fees as well as unspecified damages for Access Travel's failure to establish its offices as required by the agreement. On June 18, 1997, the trial court granted partial summary judgment in favor of Access Travel on its breach of contract claim in the amount of $8,950.15, representing the $13,450 in unpaid commissions less $4,499.85 in franchise fees owed by Access Travel. Other than offsetting the unpaid franchise fees, the order did not address TPI's counterclaim for damages for breach of contract.[1]

---

[1] Access Travel does not appeal the trial court's offsetting of the unpaid franchise fees.

In two enumerations, TPI contends that, because Access Travel continued to maintain its Northside Drive office and failed to establish an ARC-approved office within its designated territory, the trial court erred in finding that a valid contract existed between the parties. These contentions are patently without merit.

As an initial matter, TPI alleged in its counterclaim that "[a] contract existed between the parties" and that "[Access Travel] breached the aforementioned franchise contract" in various ways. These unqualified allegations constitute admissions in judicio regarding the existence of a contract, and TPI cannot now assert that no contract existed. See *Ditch v. Royal Indem. Co.*, 205 Ga. App. 478-479 (422 SE2d 868) (1992).

Even apart from these admissions, the record clearly reflects that the franchise agreement constituted a binding contract. Nothing in the franchise agreement suggests that, by continuing to maintain the Northside Drive office outside its designated territory, Access Travel failed to satisfy a condition precedent to the formation of the contract. Indeed, the agreement refers to the maintenance of an office outside the territory as an "event of default" resulting in "termination" of the contract. This language necessarily presupposes the existence of a valid contract. Moreover, TPI subsequently agreed that Access Travel could maintain the Northside Drive office on certain conditions. Although Access Travel may not have complied with these conditions, this at most constitutes a breach of the agreement allowing TPI to recover damages, and not the failure of a condition precedent. See *King Indus. Realty v. Rich*, 224 Ga. App. 629, 631 (3) (481 SE2d 861) (1997) ("Georgia law favors conditions subsequent rather than precedent and favors remediation by damages rather than forfeiture.").

Similarly, nothing in the franchise agreement indicates that obtaining ARC approval for the Sandy Springs or Hildebrand Drive offices within the designated territory was a condition precedent to the formation of a valid contract. The contract itself states that TPI is obligated to "assist and advise [Access Travel] in applying for and obtaining appointments as a member of . . . ARC," indicating that the parties intended the contract to be binding prior to Access Travel's obtaining any necessary ARC approvals.

Moreover, TPI's present assertion — that Access Travel's failure to comply with the franchise agreement regarding the location of its offices shows that no valid contract existed between the parties — is completely inconsistent with its past conduct. TPI's March 22, 1995 letter terminating the franchise agreement presupposed the existence of a valid contract, treating Access Travel's actions as defaults under that contract. This letter acknowledged TPI's obligation to pay earned override commissions, less the unpaid franchise fees. The

letter also stated that Access Travel was required to comply with certain provisions of the franchise agreement that survived termination, indicating that TPI considered the franchise agreement to be a binding contract.

Whether or not a valid contract existed between the parties is the only issue raised in TPI's enumerations, and TPI does not contend that Access Travel's breach of the agreement constituted a forfeiture of its right to recover earned commissions under the contract. Nevertheless, we note that "even a party who has himself breached a contract . . . is entitled to recover damages as against the other party who has failed in his contractual obligations." *Pooler v. Taylor*, 173 Ga. App. 859, 862 (2) (b) (328 SE2d 749) (1985). Because the record conclusively establishes that Access Travel earned the override commissions at issue, and that TPI failed to pay such commissions, the judgment of the trial court must be affirmed. Although TPI has asserted a counterclaim for damages due to Access Travel's alleged breach of the franchise agreement with respect to the location of its offices, the trial court did not rule on such claim in its order. Accordingly, we do not address that issue here.

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED OCTOBER 23, 1998.

*Schulten, Ward & Turner, W. Scott Schulten, Erin S. Stone*, for appellant.

*Paul, Hastings, Janofsky & Walker, John G. Parker, Karen J. Wickliffe*, for appellee.