### A08A0206. WILEN v. MURRAY.
(663 SE2d 403)

SMITH, Presiding Judge.

Following a bench trial, Joseph Wilen appeals from the trial court's judgment in favor of Dr. Richard G. Murray, an expert witness retained by Wilen's attorney in a previous lawsuit. In this appeal, Wilen contends that he is not responsible for Dr. Murray's expert witness fees because he did not enter into a direct contract with Dr. Murray. He also asserts that the trial court erred by awarding attorney fees under OCGA § 13-6-11. For the reasons set forth below, we affirm.

---

> The court is the trier of fact in a bench trial, and its findings will be upheld on appeal if there is any evidence to support them. However, if the trial court makes a finding of fact which is unsupported by the record, it cannot be upheld; and if the judgment is based upon a fact for which there is no evidence, it should be reversed.

(Citation and punctuation omitted.) *Z & Y Corp. v. Indore C. Stores*, 282 Ga. App. 163, 169 (1) (638 SE2d 760) (2006).

The record in this case shows without dispute that Wilen, Carolina Industrial Products, Inc. ("Carolina Industrial"), and J. W. Equities, LLC were represented by a single attorney, Edward McConwell, in a property damage lawsuit filed against Learjet, Inc., Raytheon Aircraft Services, Inc. and National Union Fire Insurance of Pittsburgh in the United States District Court for the District of Kansas. Wilen is the sole owner of his co-plaintiffs, Carolina Industrial and J. W. Equities, and was the sole operator of the aircraft at issue in the lawsuit. The claims against Learjet and Raytheon related to a brake failure on an aircraft operated by Wilen that caused it to veer off a runway. The claims against National Union related to its failure to fully pay the repair costs for the aircraft.

Dr. Murray testified that McConwell contacted him and hired him to work on the case against Learjet, Raytheon, and National Union on behalf of the plaintiffs. The terms of their agreement were that Dr. Murray would submit monthly statements to McConwell and McConwell "would see that they were paid." Dr. Murray's first two monthly statements totaling $4,593.09 were paid timely through a Carolina Industrial check signed by Wilen. His following four invoices were dated October 1, 2001; November 1, 2001; January 2, 2002; and February 1, 2002 respectively. Those invoices totaled $17,370.53 and were never paid. On December 1, 2001, Dr. Murray wrote McConwell because his November 1, 2001 invoice remained unpaid, and he requested "efforts to expedite payment."

On December 18, 2001, the trial court in the pending lawsuit against Learjet, Raytheon, and National Union granted partial summary judgment in favor of the defendants. The trial court's ruling rendered Dr. Murray's testimony against Learjet moot. Dr. Murray testified that the opinions he rendered in the case were primarily used in the portion of the case against Learjet alleging a product defect. The Second Amended Complaint includes Wilen as one of the plaintiffs asserting claims against Learjet. The trial court subsequently excluded any testimony by Dr. Murray as to the standard of care owed by an airplane maintenance company.

Dr. Murray sent all of his invoices to McConwell, and it was his understanding based upon conversations with McConwell that "all

of the plaintiffs in the complaint were guaranteeing payment for [his] account." At one point, Dr. Murray "expressed deep concern to Mr. McConwell that some of [his] past statements had remained unpaid," explaining that he "was reluctant under these circumstances to continue with services and attend the hearing. . . . Mr. McConwell stated that he also was not being paid properly and he assured that [Dr. Murray] would be paid if [he] attended the hearings and did the work." McConwell never told Dr. Murray that he was unhappy with Dr. Murray's work, nor did he complain about the amount of the invoices.

Following a bench trial, the trial court issued a verdict and final judgment in favor of Dr. Murray that included specific findings of fact and conclusions of law. The trial court concluded that McConwell was Wilen's agent and that the hiring of an expert witness was within the scope of his authority. It also concluded that no bona fide dispute existed and awarded attorney fees and expenses to Dr. Murray totaling $13,326.79.

1. Wilen argues that the trial court erred in finding the existence of an "expert witness services agreement between" himself and Dr. Murray. To the extent that Wilen is arguing that the law requires a direct contract between himself and Dr. Murray, we disagree.

The authority of a special agent, such as an attorney, "will be construed to include all necessary and usual means for effectually executing it." *Brady v. Sappington*, 40 Ga. App. 781 (151 SE 525) (1930). Georgia courts construe this authority to include settling a claim on behalf of a client, as well as hiring an expert witness. *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674-675 (308 SE2d 544) (1983) (settling a case); *Brady*, supra (hiring an expert). A client, therefore, is obligated to pay an expert witness retained on his behalf within the apparent scope of an attorney's authority. *Brady*, supra.

Wilen attempts to distinguish this case from *Brady*, supra, by arguing that *Brady* did not involve an attorney retaining an expert for a case involving multiple clients. We are not persuaded by this argument. The evidence before the trial court showed that McConwell represented three plaintiffs in the Kansas lawsuit, that the complaint in that case sought recovery on behalf of all the plaintiffs, that Dr. Murray was retained to provide expert assistance in that case, and that McConwell assured Dr. Murray that the plaintiffs, including Wilen, would pay his bill.

Under these circumstances, the fact that McConwell represented three clients does not absolve any of the three from joint and several liability for payment of the expert's bill.

[F]rom the perspective of the opposing party, in the absence of knowledge of express restrictions on an attorney's authority, the opposing party may deal with the attorney as if with the client, and the client will be bound by the acts of his attorney within the scope of his apparent authority.

*Brumbelow*, supra, 251 Ga. at 675. If there was an agreement between Wilen and his co-plaintiffs that Wilen would not be responsible for paying the expert, Wilen's remedy is a claim against his co-plaintiffs for contribution. Cf. id.

2. Wilen contends that the trial court erred by awarding attorney fees and expenses under OCGA § 13-6-11. His argument focuses on an absence of evidence of bad faith. The trial court, however, did not find that Wilen acted in bad faith, but instead based its award on the lack of a bona fide controversy.

OCGA § 13-6-11 allows recovery of litigation expenses when a defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. With respect to bad faith, the elements of bad faith that will support a claim for expenses of litigation must relate to King's acts in the transaction itself prior to this litigation, not to the motive with which it defended the litigation. A recovery for stubborn litigiousness or causing unnecessary trouble and expense is authorized if no bona fide controversy or dispute existed as to the defendant's liability. Whether such a controversy existed is a question for the [trier of fact].

(Citation omitted.) *King Indus. Realty v. Rich*, 224 Ga. App. 629, 635 (6) (481 SE2d 861) (1997).

Based upon the clear precedent that it is within the apparent authority of an attorney to hire an expert witness, *Brady*, supra, 40 Ga. App. at 781 (1), we affirm the trial court's conclusion that no bona fide controversy existed.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED JUNE 18, 2008.

*Weissman, Nowack, Curry & Wilco, Jeffrey H. Schneider*, for appellant.

*Mitchell & Shapiro, Kenneth A. Shapiro, William R. Joiner*, for appellee.