**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 25, 2018**

# In the Court of Appeals of Georgia

A18A0682. EPSTEIN, BECKER & GREEN, P.C. v. ANDURO
    HOLDINGS, LLC et al.

MCFADDEN, Presiding Judge.

Law firm Epstein, Becker & Green, P.C. filed this breach of contract action against former clients Anduro Holdings, LLC, La Famiglia Family Trust, and Henry Datelle for $522,489.66 in outstanding legal fees. The law firm alleged that the defendants were jointly and severally liable for the fees, while the defendants contended that Anduro Holdings was solely responsible for the fees.

The jury returned a verdict in favor of Epstein, Becker & Green, but the trial court granted Datelle and La Famiglia's motion for judgment notwithstanding the verdict. Epstein, Becker & Green appeals, arguing that the trial court erred because some evidence supported the jury's verdict. We agree. So we reverse.

1. *Facts*.

A trial court may grant a judgment notwithstanding the verdict

> only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, judgment [notwithstanding the verdict] should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts.

*Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 159 (1) (c) (256 SE2d 916) (1979) (citation and punctuation omitted).

So viewed, the evidence shows that Datelle formerly was the chairman of the board of Anduro Holdings, and he and his family have a controlling interest in the company. La Famiglia is an entity established to loan money to and to invest in Anduro Holdings. Datelle is a trustee of La Famiglia.

In 2010, La Famiglia sued two co-owners of Anduro Holdings in a case removed to federal court. See *La Famiglia Trust v. O'Connor*, No. 1:10-CV-1438-CAP, 2010 U.S. Dist. LEXIS 146932 (N.D. Ga. Dec. 22, 2010). The co-owners countersued La Famiglia, Datelle, and Anduro Holdings. Datelle retained

Michael Coleman, his longtime attorney and, at that time, a partner at Epstein, Becker & Green, to represent him, Anduro Holdings, and La Famiglia in the federal litigation.

The parties signed a "Joint Representation Letter Agreement" regarding conflicts that could arise from Epstein, Becker & Green jointly representing Anduro Holdings, La Famiglia, and Datelle. The agreement provided that the signatures of Anduro Holdings, La Famiglia, and Datelle indicated their wish "to be jointly represented by E[pstein, ]B[ecker & ]G[reen]" in the federal litigation. Coleman signed on behalf of the firm, a board member signed on behalf of Anduro Holdings, and Datelle signed on behalf of La Famiglia and on his own behalf.

The agreement contained nothing about payment of the legal fees incurred in the federal court representation. At trial, the law firm's chief operating officer explained that the firm had represented Datelle, his business interests, and La Famiglia in other matters, so the rates for legal fees were established. Over the course of the representation, Anduro Holdings paid about $400,000 in fees. Datelle personally made two payments of roughly $50,000 each, although he said that any money that he paid was a loan to Anduro Holdings. An entity called Buona Fortuna in which Datelle owned an interest also paid some of the fees.

At some point, with the defendants' consent, Epstein, Becker & Green withdrew from the representation in federal court because the defendants owed more than $500,000 in fees. The law firm then filed this lawsuit, alleging that under the Joint Representation Letter Agreement, the three defendants were jointly and severally liable for the outstanding fees.

Anduro Holdings consented to the entry of judgment against it, and the case proceeded to trial against La Famiglia and Datelle. The jury returned a verdict in favor of Epstein, Becker & Green, awarding damages of $522,489.66 against each defendant. The trial court granted the defendants' judgment notwithstanding the verdict and Epstein, Becker & Green filed this appeal.

2. *The parties' contract*.

Although Epstein, Becker & Green alleges breach of the Joint Representation Letter Agreement, that agreement does not contain any provision regarding the payment of legal fees. Yet there is no dispute that the parties intended Epstein, Becker & Green to be paid for its work. When "the writing does not purport to contain all the stipulations of the contract, parol evidence shall be admissible to prove other portions thereof not inconsistent with the writing. . . ." OCGA § 24-3-2. Similarly, "if only a part of a contract is reduced to writing . . . and it is manifest that the writing was not

4

intended to speak the whole contract, then parol evidence is admissible[.]" OCGA § 13-2-2 (1). So Epstein, Becker & Green could rely on parol evidence to prove the missing payment terms. And where there is a conflict in the evidence as to the non-written terms, a jury must resolve the matter. Cf. *Rome v. Polyidus Partners LP*, 322 Ga. App. 175, 178 (2) (744 SE2d 363) (2013).

At the jury trial, Epstein, Becker & Green, and Datelle and La Famiglia presented conflicting evidence on the issue of whether the obligation to pay the legal fees was joint and several or solely Anduro Holdings'. The chief operating officer of the law firm testified that the firm was "always concerned with Anduro's ability to pay because of the situation, so it was very important to know that all three entities that were being represented [were] responsible [for] paying us." He testified that in general the entity that is being represented is responsible for paying the bill, and specifically, since Datelle, La Famiglia, and Anduro Holdings were all represented, they were all responsible for paying. He noted that the invoices were always sent in care of Datelle, even though the Joint Representation Letter Agreement indicates that Anduro Holdings has a different address.

The chief operating officer explained that because the firm was representing the defendants in a litigation matter, the work could not be parsed out to one

5

defendant or another and that the work benefitted all of the defendants. He testified that Coleman made clear that the three parties would pay the firm, and that Coleman assured him that the firm would be paid because Coleman had worked with Datelle for years and Datelle always paid his bills. It made sense to the chief operating officer that Datelle and La Famiglia would pay because they were owners of Anduro Holdings.

Datelle, on the other hand, testified that he explicitly told Coleman that Anduro Holdings would be responsible for any legal expenses incurred in defending Anduro Holdings, Datelle, and La Famiglia. Coleman testified that generally, the understanding was that Anduro Holdings would pay the legal fees for La Famiglia and Datelle and that he never intended or expected Datelle to be personally liable for the legal fees. He conceded that he never communicated to the firm's chief operating officer that only Anduro Holdings would be responsible for paying, but that was his understanding since Datelle was being sued for acts taken as an officer of the company. He knew, however, that Datelle could be held personally liable in the federal litigation. He also typically expects the client he is representing to pay him, unless there is some contrary agreement.

"The issues were properly submitted to the jury and were resolved against the defendant[s]. The jury is the final arbiter of the facts, and the verdict must be construed by the trial and appellate courts in the light most favorable to upholding the jury verdict." *Church's Fried Chicken*, 150 Ga. App. at 159 (1) (c) (citations omitted). As there was some evidence supporting the jury's verdict, the trial court erred in granting judgment notwithstanding the verdict. Id. See *Wilen v. Murray*, 292 Ga. App. 30, 32-33 (1) (663 SE2d 403) (2008) (affirming judgment finding that attorney's three clients were jointly and severally liable to expert for expert fees when expert's understanding, based on conversations with attorney, was that all three clients agreed to pay his account); *Maughan v. Turner Communications Corp.*, 143 Ga. App. 262, 263 (1) (238 SE2d 262) (1977) (evidence supported factfinder's conclusion that defendants were jointly and severally liable on a contract that stated "We (the undersigned) hereby authorize and contract for one (1) painted advertising displays (sic).").

*Judgment reversed. Ray and Rickman, JJ., concur.*