CHARLES PRETTYMAN *et al.*, Plaintiffs-Appellants, v. COMMONWEALTH EDISON COMPANY, Defendant-Appellee.

First District (6th Division)   No. 1—94—1832

Opinion filed June 30, 1995.

Charles Barnhill, Jr., and Paul Strauss, both of Davis, Miner, Barnhill & Galland, of Chicago, and David B. Kahn and Mark E. King, both of David B. Kahn & Associates, Ltd., of Northfield, for appellants.

William F. Conlon and Lisa D. Freeman, both of Sidley & Austin, and Glenn D. Newman, of Commonwealth Edison Company, both of Chicago, for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Charles Prettyman, Marshall Shifrin, and George Bravos, appeal from an order of the trial court granting summary judgment in favor of defendant, Commonwealth Edison, plaintiffs' former employer. Plaintiffs brought this action seeking compensation for vacation time which they had allegedly accrued prior to being terminated by defendant but for which they contended they were not paid. Plaintiffs alleged in their complaint that defendant's vacation policy violated section 5 of the Illinois Wage Payment and Collection Act (820 ILCS 115/5 (West 1992)) (Act). The trial court found that no genuine issues of material fact existed so as to preclude summary judgment and that the question whether defendant's vacation policy complied with the Act was one of law. The court held that defendant's policy complied with the Act and that plaintiffs were compensated for all the vacation time to which they were entitled. Plaintiffs appeal.

The relevant facts are as follows. Plaintiffs were long-term management employees of defendant who were terminated in September 1992 as part of an extensive reduction of defendant's management work force. Defendant's written vacation policy for its management employees was incorporated into what defendant commonly refers to as "General Company Order No. 39" (GCO No. 39), and in relevant part provides as follows:

"1. In each calendar year, all regular employees who were on the payroll and under age 70 at the close of the last day of the preceding calendar year shall be entitled to vacations with pay in accordance with the provisions of this Order.

2. A regular employee will be granted a regular vacation of two calendar weeks after completing the first year of service. However, a management employee will be eligible for a vacation of one calendar week after completing six months of continuous service, this vacation to be taken prior to the first year service anniversary date. Thereafter, a regular vacation of two calendar weeks in each calendar year will be allowed.

\* \* \*

11. A regular employee, eligible for a vacation with pay, whose employment by the Company is terminated before taking the entire vacation to which he or she is eligible during the current calendar year, shall receive a vacation allowance equal to his or her basic hourly rate for the number of eligible days in excess of the number of days of vacation already taken during the current calendar year \*\*\*."

In addition to the two weeks per calendar year of vacation time, employees received extra vacation days as their number of years of service increased. Thus, after 25 years of service, as in plaintiffs' case, an employee would receive the basic 10-day allotment plus 20 additional vacation days for a total vacation allotment of 30 days, the maximum allowable under GCO No. 39. In 1992, plaintiff Prettyman had used 14 of his 30 vacation days, Shifrin 11, and Bravos 27. Upon termination, defendant paid Prettyman $3,611.08 for his 16 unused vacation days, Shifrin $4,292.54 for his 19 unused days, and Bravos $779.54 for his three unused days.

At the close of the hearing on defendant's motion for summary judgment, the trial court found that defendant's vacation policy does not operate on an earn-in-arrears basis but is forward-looking in that defendant grants its employees their respective vacation allowances for a particular year on January 1 of that year. The court determined that there was no factual dispute as to the existence and application of defendant's vacation policy to plaintiffs, but that the sole issue was whether the policy improperly denied employees payment for accrued vacation time, in violation of section 5 of the Act. This, the court held, was exclusively a legal question appropriate for determination on a motion for summary judgment. The court found that defendant's policy complied with the Act's requirements since it did not require plaintiffs to forfeit any of their earned vacation benefits but, in fact, allowed them to keep all of the allotted vacation time for 1992 which they received on January 1 of that year (less used vacation days), despite the fact that they only worked for three-quarters of the year. The court entered summary judgment for defendant.

On appeal, plaintiffs contend that the trial court misconstrued how defendant's vacation policy operates in practice. They argue that the policy actually operated to deprive them of their *pro rata* share of vacation benefits earned at the time of termination. Accordingly, entry of summary judgment for defendant was improper.

Although the use of summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should therefore be used only when the resolution of a case hinges on a question of law and the moving party's right to judgment is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (735 ILCS 5/2—1005 (West 1992); *Green v. International Insurance Co.* (1992), 238 Ill. App. 3d 929, 605 N.E.2d 1125.) In deciding a mo-

tion for summary judgment, the trial court's sole function is to determine whether issues of material fact exist; it is not to try those issues. (*Green*, 238 Ill. App. 3d at 933, 605 N.E.2d at 1125.) The court must construe the record before it most strictly against the movant and in favor of the nonmovant and draw all reasonable inferences in favor of the nonmovant. (*Green*, 238 Ill. App. 3d at 933, 605 N.E.2d at 1125.) The trial court's grant of summary judgment is subject to *de novo* review on appeal. *Wiseman-Hughes Enterprises, Inc. v. Reger* (1993), 248 Ill. App. 3d 854, 617 N.E.2d 1310; *Myers v. Health Specialists, S.C.* (1992), 225 Ill. App. 3d 68, 587 N.E.2d 494.

■ Plaintiffs contend that defendant's vacation policy violates section 5 of the Act, which in relevant part states:

> "Unless otherwise provided in a collective bargaining agreement, whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time *earned* in accordance with such contract of employment or employment policy, the monetary equivalent of all *earned* vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and no employment contract or employment policy shall provide for forfeiture of earned vacation time upon separation." (Emphasis added.) 820 ILCS 115/5 (West 1992).

As defendant correctly points out, an employer violates this provision only when it either fails to pay its former employees for their earned but unused vacation time or adopts a policy which provides that an employee loses earned but unused vacation time upon separation.

In the present case, plaintiffs contend that genuine issues of material fact exist regarding how and when defendant's employees earn their vacation benefits, and, as such, summary judgment for defendant was improper. Plaintiffs, however, have failed to produce any exhibits, depositions, affidavits or other evidence which establishes that vacation time is earned in arrears, while defendant has presented evidence showing that employees are granted their vacation benefits in a given year *before* their services are rendered in that year. In addition to the vacation policy, defendant has offered the affidavit and deposition testimony of George Mitchell, its director of compensation and benefit planning, which indicates that annual vacation benefits are, in fact, paid to employees before the company receives the benefit of their labor for a given year.

Plaintiffs contend, however, that defendant's vacation policy is virtually identical to the one invalidated in *Golden Bear Family Restaurants, Inc. v. Murray* (1986), 144 Ill. App. 3d 616, 494 N.E.2d

581. (*Golden Bear* consists of two separate cases which were consolidated in the trial court and on appeal. Plaintiffs here rely on the factual circumstances of only one of the two cases.) In *Golden Bear*, the court found that the following written vacation policy of the plaintiff-employer violated section 5 of the Act:

> " 'Earned vacation is the amount of vacation to which an eligible employee becomes entitled to take in a calendar year if the employee is actively on the payroll working a regular schedule (not on disability or leave of absence) on the Wednesday proceeding [*sic*] January 1.' " *Golden Bear*, 144 Ill. App. 3d at 618, 494 N.E.2d at 583.

The employer discharged the defendant-employee on December 22, 1982, before the vacation policy cutoff date, and thus declined to pay the employee vacation benefits for the approximately 11³/₄ months in 1982 during which she worked for the employer. The employee filed a wage claim with the Illinois Department of Labor (DOL) contending that her former employer's vacation policy violated the Act. The employee sought from the employer the vacation pay she earned in 1982. The DOL determined that the plaintiff was entitled to $1,225.02 as accrued vacation wages for 1982.

Before the DOL began any enforcement action, the employer brought an action in the trial court seeking a declaratory judgment, naming as defendants its former employee, the DOL and the superintendent of DOL's wage claims division. The trial court granted summary judgment for the employee, ruling that the DOL reasonably interpreted the Act in ruling that employees earned vacation pay *pro rata*.

On appeal, this court affirmed the trial court's ruling that an employee earns vacation pay *pro rata*. The court found that "[t]he Act expressly includes the monetary equivalent of earned vacation as part of the final compensation to discharged employees" and "expressly forbids an employment contract or employment policy to forfeit an employee's earned vacation pay upon separation." (*Golden Bear*, 144 Ill. App. 3d at 627, 494 N.E.2d at 588.) The court determined that the employer's vacation policy did precisely this since it made the employee's right to receive payment for earned vacation time dependent upon being employed on a specific date and forced her to forfeit the compensation if that did not occur. The court found that the policy violated the requirement that an employer "return those benefits that he derives from the continued labor of the employee." *Golden Bear*, 144 Ill. App. 3d at 627, 494 N.E.2d at 588.

In the present case, plaintiffs argue that defendant's policy of requiring its employees to be "on the payroll *** at the close of the

last day of the preceding calendar year" in order to be entitled to vacation pay in a given year is equivalent to what the employer in *Golden Bear* wrongfully required of its employees. They contend that they were deprived of their *pro rata* share of earned vacation benefits in 1992 because they were terminated prior to December 31 of that year. We disagree. Indeed, we believe the vacation policy at issue here is wholly distinguishable from that in *Golden Bear*.

The following example illustrates how defendant's vacation policy operates in practice:

| Hire Date (No vacation) | Six Months (One Week Vacation) | One-Year Anniversary (Two Weeks) | 1st Day of New Calendar Year (Two Weeks) |
|---|---|---|---|
| 12/1/93 | 6/1/94 | 12/1/94 | 1/1/95. |

As this chart indicates, under defendant's vacation policy, a new employee hired on December 1, 1993, would not have earned any vacation benefits during his first six months of service, and if his employment had been terminated during that time, he would not have been entitled to any vacation pay at termination. At the beginning of the seventh month of employment, on June 1, 1994, the employee would have been granted one week of vacation benefits for his next six months of work, to be used prior to the first year of service anniversary date. Under the policy, had the employee been terminated during that six-month period, he would have been paid for any of these granted but unused vacation days.

On the employee's one-year anniversary date, December 1, 1994, the policy states that the employee would be entitled to 11 more days of vacation to be used before the start of the next calendar year. In this example, the employee would have had to use the 11 days prior to January 1, 1995. If his employment had been terminated between December 1, 1994, and January 1, 1995, defendant would have paid him for any portion of the 11 days he had not yet used.

Beginning on January 1, 1995, and on the first day of each succeeding calendar year, the policy entitles the employee to receive his entire vacation allowance for the upcoming year. In the foregoing example, the employee would have been entitled to an additional 11 days of vacation on January 1, 1995, and if he were terminated on that date or on any other date in 1995, he would be compensated for those days less any vacation days that were used.

In his affidavit, Mitchell stated that an employee is given his entire vacation allowance for a given year on January 1 of that year.

Mitchell further stated that "employees do not earn or accrue vacation based upon past performance or past time worked. The only period in an employee's career that this might be possible occurs when the employee initially starts. However, the Company accelerates time to enable the employee to become a part of the calendar year system as soon as possible." Moreover, Mitchell explained, if an employee is terminated prior to the end of the calendar year and has days remaining in his vacation allowance, the employee is paid for all of the unused time. Mitchell stated that "[o]nce an employee is given the vacation allowance, it is the employee's regardless of subsequent events."

Thus, contrary to plaintiffs' contention, the undisputed facts here show that they were not deprived of any *earned* vacation benefits but were, in fact, allowed to keep all of the 1992 vacation benefits given them on January 1 of that year despite having only worked for nine months of that year. As the foregoing discussion makes clear, the situation here differs from that in *Golden Bear* in that, here, no labor was yet rendered by plaintiffs at the time they were allotted their 1992 vacation benefits. Unlike in *Golden Bear*, where the vacation pay was considered compensation for past services, in this case, the vacation pay is conferred to the employees up front. Thus, it cannot be said that defendant's employees *earn* their vacation benefits on a *pro rata* basis.

Essentially, what plaintiffs seek is three-quarters of the vacation benefits they would have received for the *next* year, 1993, had they been on defendant's payroll at the close of business on December 31, 1992. Neither the Act nor *Golden Bear*, however, requires defendant to pay out such a benefit. As defendant's vacation policy is not set up to confer vacation benefits as payment for past services but, rather, is essentially set up to confer such benefits as an inducement for future services, plaintiffs could never prevail on their claim that the policy violates section 5 of the Act by depriving them of their *pro rata* share of *earned* vacation time. Accordingly, we hold that summary judgment in favor of defendant was proper.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN and ZWICK, JJ., concur.