A03A1042. FERNANDES v. MANUGISTICS ATLANTA, INC.
(582 SE2d 499)

BLACKBURN, Presiding Judge.

Rodney L. Fernandes sued his former employer, Manugistics Atlanta, Inc. (Manugistics) f/k/a Talus Solutions, Inc. (Talus), to recover sales commissions he alleged were due under two employ-

---

ment contracts. After reviewing the contractual terms at issue, the trial court awarded summary judgment to Manugistics. Fernandes filed this appeal, primarily to contest the court's interpretation of the terms of the agreements. We find no error and affirm.

On April 12, 1999, Fernandes began working at Talus, a developer and seller of computer software products and consulting and support services. Talus hired Fernandes to sell its products and services. Under the "Fiscal Year 1999 Talus Compensation Plan," Talus agreed to pay Fernandes a base salary of $75,000 plus commissions calculated by using certain sales quotas, rate factors, and revenue milestones.

Upon reaching specified sales figures, Fernandes became eligible for certain commissions and bonuses. Under Section V of the 1999 Plan, the payment dates for various commissions depended upon the particular type of sale associated with each commission. For example, the commission on a license fee sale was "to be paid 30 days after Talus receives full payment from [the] customer." Whereas, commissions for support sales and consulting sales, if independent of a sale of a license fee, were to be paid monthly over the original term of the project. According to Section III (C) of the 1999 Plan, "[a]n adjustment may be made at the discretion of the CEO to the commission payment if the product or services do not substantially produce the revenue and/or profit estimated at the time of the sale." Under the compensation structure in the 1999 Plan, in addition to salary, Talus paid Fernandes $325,588.41 in bonuses and commissions for his 1999 sales.

On February 15, 2000, Fernandes and Talus executed the "Fiscal Year 2000 Talus Compensation Plan." Under the 2000 Plan, Talus agreed to pay Fernandes a base salary of $100,000 and offered stock options to be calculated on his 2000 bookings. Among other provisions, the 2000 Plan increased his sales quota but also increased his rate factors, meaning Fernandes could earn higher commissions on his sales. Depending on the type of service or product Fernandes sold, i.e., license, consultation, support, or combination thereof, the credit for booking the sale and the due date of the commission would vary. Under the 2000 Plan, commissions on license fees were payable 30 days after Talus received full payment while commissions on consulting services without a license fee were to be paid over the term of the consulting project.

Both the 1999 and 2000 Plans contained terms and conditions applicable only in the event that employment at Talus ended. Under the 1999 Plan, "[a]n employee's ability to earn commission and bonuses under a Compensation Plan terminates on the date the employee leaves the Company." More specifically, the 1999 Plan provided: "[c]ompany is only [responsible for] that portion earned and

payable, within the terms of the Compensation Plan, up to and including the employee's termination date." In sum, under the 1999 Plan, if Fernandes entered a consulting agreement with a customer, assuming that he met his sales quota, his commission would be payable each month during the contract term, provided that he remained employed at Talus and also subject to Talus's discretionary authority to administer the 1999 Plan.

Similarly, the 2000 Plan provided, "[a]n employee's ability to earn commission and bonuses under the Plan terminates on the date the employee terminates employment with the Company for any reason." The 2000 Plan stated:

> The Company is responsible for the portion of compensation that is earned and payable, within the terms of the Plan, up to and including the employee's termination date. For purposes of this Plan, compensation is considered earned and payable when *both* the credit for quota criteria has been satisfied and the cash payment date has occurred, both as described below.

Thus, under both compensation plans, if Fernandes left the company, Talus was responsible only for that portion of commission "earned and payable" within the terms of the payment schedule of the plans "up to and including the employee's termination date."

Before completing a full year at Talus, Fernandes resigned on May 10, 2000, to pursue what he described as "a better opportunity" and began working for a competitor. Fernandes testified that, before he left Talus, Michael Cote, the chief financial officer, had tried to dissuade him from leaving. He recalled Cote saying that "he didn't understand why I would leave at the risk of all this money that I had on the table." Fernandes testified, "I told Mr. Cote I did not believe there was money at risk on the table, that I had earned my money and it was due me." At that point, Cote told Fernandes that he was mistaken. When Fernandes could not obtain the commissions to which he felt entitled, he sued, claiming Manugistics failed to pay the commissions.

On summary judgment, Fernandes testified that by his calculation, Manugistics owed him $259,563 in commissions. Later, he stipulated to the amount as $273,385.33, plus interest and attorney fees. He testified that he thought "earned" and "payable" meant the same thing, and he testified that "paid" and "payable" are "kind of the same thing." He claimed that his commissions on consulting deals were earned when he booked the sale and were not contingent on his continued employment or on the continuation of the consulting contract itself. In his view, the 1999 Plan allowed his commissions to be

adjusted only at the time of sale regardless of the cancellation of the contract.

On the issue of Fernandes's 1999 sales and commissions, Manugistics offered the testimony of Bonnie Cunningham, the staff accountant responsible for processing commission statements. Cunningham created a spreadsheet that listed all of his sales for 1999, the original contract terms for those sales, the commission payment dates for each sale, the original estimated contract value of each sale, the total potential commission he could earn on each sale, the commissions actually paid and the potential commissions remaining after May 10, 2000, had he not resigned. Under the 1999 Plan, Talus paid Fernandes $222,700.91 in commissions. Cunningham testified that all of the $268,226.65 of additional commissions that Fernandes was claiming under the 1999 Plan, "had payment dates after May 10, 2000." She testified that on two sales booked by Fernandes in 1999, the customers never paid Talus, so no commission would have been paid. It is undisputed that Fernandes's biggest customer, Coach USA, who had accounted for nearly half of all of his sales in 1999, prematurely cancelled its consulting contract in July 2000, and that Talus had stopped paying its two current employees for that contract. Exhibit 2 that Fernandes attached to his complaint which allegedly reflects his "Remaining 2000" commissions, shows that $236,428.57 of the amount for which he is suing, is derived exclusively from the Coach transaction, a defunct project that "was never completed."

As to his sales in 2000, Fernandes testified that he had three sales, all of which were consulting sales. Under the 2000 Plan, commissions for consulting sales without a license fee were to be paid over the term of the consulting project "beginning within 60 days of contract signing." Talus paid him $9,996.30 in commissions for those sales, and Fernandes claimed an additional $5,158.70. A spreadsheet that lists the three sales, however, shows that Talus fully paid him all commissions earned through May 10.

After a hearing on cross-motions for summary judgment, the trial court found that Fernandes had not met the necessary preconditions for payment of additional commissions under either of the two plans. The trial court decided:

> [t]he Court finds that under the unambiguous terms of the two commission plans at issue, Plaintiff was entitled to only those commissions which were both earned and payable up to and including his date of termination, May 10, 2000. The Court further finds that none of the commissions Plaintiff is seeking were payable as of the date of his resignation because the cash payment date for such commissions had not occurred.

1. Fernandes asserts that the trial court failed to apply or to properly apply the rules of contract construction to the 1999 Plan and to the 2000 Plan. He argues that the trial court erred in construing "earned and payable" as imposing two separate conditions precedent to his entitlement to commissions.

"Contract construction involves a three-step process. The court must first determine whether the contract is ambiguous; if it is, the applicable rules of construction must be applied. Only if an ambiguity remains after applying the rules of construction does a jury resolve the ambiguity." *Dooley v. Dun &c. Software Svcs.*[1] But, "[w]here the language of a contract is plain and unambiguous, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance." *MAG Mut. Ins. Co. v. Gatewood.*[2]

We concur with the trial court's finding of no ambiguity. Although Fernandes claims that "earned" and "payable" are not two distinct terms, his own evidence shows otherwise. Exhibit 2 attached to Fernandes's complaint shows that, while commissions were "earned" when a sale was booked, they were not payable, if at all, until the time for payment occurred. On some projects, the commission was "[t]o be paid 30 days after Talus receives payment," whereas for others, the commission was to be paid each month on a continuing monthly basis. Yet, by Fernandes's strained interpretation, all sales commissions were payable when earned and were earned when booked. By this construction, Fernandes would have been entitled to a commission at the time that he booked a sale. But, this interpretation not only contravenes how Fernandes was actually paid each month but also contradicts the explicit terms and provisions of the two compensation plans. Neither the trial court nor this Court is at liberty to rewrite or revise a contract under the guise of construing it. *Sayles v. Brown.*[3] No error has been shown.

2. Fernandes contends that the trial court erred by overlooking the fact that his commissions were the result of two distinct compensation plans, not just the 2000 Plan. On the contrary, the order plainly refers to "two commission plans." Moreover, both plans contain the same dispositive terms that made Talus responsible "only [for] that portion" of compensation that was "earned and payable" within the terms of the respective plans, "up to and including the employee's termination date." The trial court properly found the meaning of "earned" to be distinct from that of "payable" since the latter term plainly meant when the company became obligated to pay

[1] *Dooley v. Dun &c. Software Svcs.*, 225 Ga. App. 63, 64 (1) (483 SE2d 308) (1997).
[2] *MAG Mut. Ins. Co. v. Gatewood*, 186 Ga. App. 169, 172-173 (1) (367 SE2d 63) (1988).
[3] *Sayles v. Brown*, 178 Ga. App. 755, 758 (1) (344 SE2d 539) (1986).

the commission according to type of the sale involved and other variables. See *Gatewood*, supra. We discern no error.

3. Fernandes contends that the trial court erred by treating the termination provisions in the plans as imposing conditions precedent on his right to commissions, when, in fact, the terms imposed created an attempted forfeiture clause which must fail as a matter of law. We do not agree.

Although forfeitures are disfavored in the law, they are not unlawful and, depending upon the contractual terms, may be enforced. See *Russell v. KDA, Inc.*[4] "[W]here a contract in unmistakable terms provides for a forfeiture and is otherwise free from legal infirmity, neither a court of law nor a court of equity will relieve against the forfeiture." *Equitable Loan &c. Co. v. Waring.*[5] Here, as in *Russell*, supra, there is no ambiguity. The language authorizing the payment of commissions "earned and payable" only through the last day of employment is clear and unmistakable. See *A. L. Williams & Assoc. v. Faircloth.*[6] Thus, the express terms of the contracts preclude the claims for additional commissions beyond May 10, past his last day of employment. Compare *Burritt v. Media Marketing Svcs.*[7] (employer's breach of notice provision prevented employer from enforcing forfeiture provision).

Fernandes's reliance upon *Rodriguez v. Miranda*[8] is misplaced. In *Rodriguez*, an employment agreement entitled Miranda to a year-end bonus of 40 percent of the clinic's gross income in excess of $525,000 for the calendar year. But, the clinic terminated Miranda's employment in mid-year. The agreement, however, did not address the question of his year-end bonus in the event that his employment ceased during the calendar year. This Court resolved the ambiguity as to the possible forfeiture of his bonus against the contract drafter and found Miranda was entitled to prorated compensation for the months that he had labored at the clinic. Id. at 783 (2). But here, there is no ambiguity in the plans. So *Rodriguez* neither authorizes nor requires a different result but is merely consistent with the law on forfeiture that requires an ambiguous provision be construed against its drafter. See *McKissick v. Roth Communications of Savannah.*[9]

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

[4] *Russell v. KDA, Inc.*, 206 Ga. App. 397, 399 (2) (425 SE2d 406) (1992).

[5] *Equitable Loan &c. Co. v. Waring*, 117 Ga. 599 (8) (44 SE 320) (1903).

[6] *A. L. Williams & Assoc. v. Faircloth*, 259 Ga. 767, 768 (1) (b) (386 SE2d 151) (1989).

[7] *Burritt v. Media Marketing Svcs.*, 204 Ga. App. 848, 849 (420 SE2d 792) (1992).

[8] *Rodriguez v. Miranda*, 234 Ga. App. 779 (507 SE2d 789) (1998).

[9] *McKissick v. Roth Communications of Savannah*, 203 Ga. App. 747, 749 (1) (417 SE2d 696) (1992).

DECIDED MAY 13, 2003 —
RECONSIDERATION DENIED JUNE 2, 2003 — 

*Fortson, Bentley & Griffin, Roy E. Manoll III, Richard G. Douglass*, for appellant.

*Cushing, Morris & Armbruster, Jason C. Grech*, for appellee.