A04A2241. MILHOLLIN et al. v. SALOMON SMITH BARNEY, INC. et al.

(612 SE2d 72)

SMITH, Presiding Judge.

J. Lee Milhollin appeals from the trial court's grant of judgment on the pleadings to Salomon Smith Barney, Inc. (SSB) and Citigroup, Inc. in a suit Milhollin brought to recover the part of his salary that he forfeited under the terms of an incentive compensation plan. The plan provided for partial payment in stock, subject to certain restrictions. After review, we find no legal error in the trial court's decision and affirm.

Milhollin, a former employee of SSB, filed suit against SSB and

Citigroup on his own behalf and that of others similarly situated.[1] Milhollin asserted claims for violations of the Georgia Labor Law, conversion, breach of contract, breach of fiduciary duty, and unjust enrichment. All these counts derived from an employee compensation agreement that he entered into with SSB known as the Capital Accumulation Plan.

In this appeal, Milhollin contends that the court's ruling on the pleadings is erroneous because his complaint set forth sufficient facts to show that his wages were not paid in full in violation of OCGA § 34-7-2. He also asserts that the plan constituted an unenforceable agreement because it embodied an unreasonable forfeiture of salary provision that created an unlawful restraint of trade.

"On motion for judgment on the pleadings, the trial court is required to accept all well pleaded material allegations of fact as true, but need not adopt a party's legal conclusions based on these facts." (Citations omitted.) *Lewis v. Turner Broadcasting System*, 232 Ga. App. 831, 832 (2) (503 SE2d 81) (1998). In deciding a motion for judgment on the pleadings, a trial court may properly consider exhibits attached to and incorporated into answers. *Shreve v. World Championship Wrestling*, 216 Ga. App. 387, 388 (1) (454 SE2d 555) (1995).

On review, we determine whether the undisputed facts that appear from the pleadings establish that the movant is entitled to judgment as a matter of law. *Ga. Oilmen's Assn. v. Ga. Dept. of Revenue*, 261 Ga. App. 393, 395 (1) (582 SE2d 549) (2003). Accordingly, we now consider only the pleadings and the plan documents attached to and incorporated into the answer.

When Milhollin's well-pleaded material allegations of fact are considered as true, they show that he worked at SSB from January 30, 1995, to August 17, 2000, as a "registered representative." During that time, SSB offered an incentive compensation plan that made shares of restricted stock available "to participating officers and certain other employees." On January 4, 1996, Milhollin executed a document entitled "Capital Accumulation Plan Election to Receive Restricted Stock." Subsection A of the plan afforded him the opportunity to select from six options listed below the sentence: "I elect to receive the following percentage of my annual cash compensation in the form of restricted stock from January 1 through June 30, 1996 (choose one)." The plan offered him six percentages from which to choose ranging from zero to twenty-five percent. Milhollin checked the box next to five percent. Subsection B stated, "I elect to receive the

---

[1] Citigroup, Inc. is the parent company of SSB. The record does not indicate that the suit acquired class action status.

following percentage of my annual cash compensation in the form of restricted stock from July 1 through December 31, 1996." Again, he checked the box next to five percent, not the box next to zero percent. Directly underneath these two elections and on the same page, the document stated:

> By completing and returning the Capital Accumulation Plan Election Form, I have elected to participate in CAP subject to all of its provisions and administrative rules. I understand I have irrevocably directed my employer, Smith Barney, Inc., to pay me the percentage I have elected in the form of restricted stock out of all cash compensation paid to me during the periods specified on the election form. *If I leave the Company voluntarily or am terminated for cause before the restrictions lapse on shares of restricted stock received under CAP, I understand that I will forfeit the restricted stock as well as the compensation I have authorized to be paid in the form of such restricted stock.*

(Emphasis supplied.) The final sentence on the plan election form advised, "If you wish to participate, your completed form must be received by your Branch Manager no later than December 26, 1995."

Under the plan, restricted stock awards did not become the property of a plan participant until two years from the grant date. A participant could obtain the restricted stock at a 25 percent discount from the then prevailing fair market price. If a participant voluntarily left SSB or was involuntarily terminated for cause before the expiration of the two-year period, however, the stock award was forfeited "as well as that portion of his or her annual compensation that had been paid in the form of Restricted Stock." During the two-year restricted period, a participant was not permitted to "sell, transfer, pledge or assign any shares of Restricted Stock awarded under the plan." At the end of the two-year period, these restrictions ceased and the plan participant would receive his stock certificates.

After Milhollin voluntarily left his employment at SSB in August 2000 and forfeited the restricted stock, he sued SSB, claiming the plan "is just a modern day vehicle for Defendants, as employers, to steal salary from their employees, acts which are illegal and unconscionable." He claimed a right to the "forfeited salary . . . in the form of 364.67 shares of Citigroup stock, valued at time of termination at approximately $27,500." Milhollin asserted that SSB and Citigroup wilfully violated the law by requiring him to forfeit part of his salary pursuant to the plan and by failing to pay his full compensation. He alleged that "the only way . . . [to] avoid wage forfeiture was to die,

become totally disabled, retire, or be terminated without cause, as Defendants defined 'cause.' "

SSB and Citigroup answered the complaint and moved for judgment on the pleadings. Milhollin appeals the grant of judgment on the pleadings. He did not appeal the entry of judgment on the counts for conversion, breach of fiduciary duty, and unjust enrichment. Therefore, we need only address whether the pleadings contain sufficient facts as to the purported statutory violation and whether the contract was unenforceable in that it constituted an unlawful forfeiture scheme.

1. Milhollin contends that he alleged sufficient facts to support a claim under OCGA § 34-7-2 to show that SSB and Citigroup violated that statute by failing to pay the "full net amount of wages or earnings due the [employee] for the period for which the payment is made." He claims that under OCGA § 34-7-2, SSB and Citigroup had an "absolute obligation" to pay the part of his salary that he forfeited and violated OCGA § 34-7-2 by unlawfully retaining the forfeited portion of his salary. Under Count 1, he alleged a "Violation of Georgia Labor Law," claiming that the "[d]efendants willfully violated the terms of OCGA § 34-7-2 when they required [Milhollin] and other members of the class to forfeit their salary pursuant to the terms of the CAP Plan."

We do not reach the issue of whether Milhollin was entitled to file a claim under OCGA § 34-7-2 because we find that claim untimely. The face of the complaint shows that he did not file his action until January 29, 2003. Accepting as true Milhollin's material factual allegation that he was employed at SSB "from January 30, 1995 to August 17, 2000," we find that his statutory claim under OCGA § 34-7-2 is time-barred.

OCGA § 9-3-22 requires in pertinent part that "all actions for the recovery of wages, overtime, or damages and penalties accruing under laws respecting the payment of wages and overtime shall be brought within two years after the right of action has accrued." When recovery "is sought under rights granted by a law respecting wages," the two-year limitation period in OCGA § 9-3-22 applies. *City of Atlanta v. Adams*, 256 Ga. 620, 621 (351 SE2d 444) (1987). Because the undisputed facts establish that Milhollin did not file his statutory claim within the two-year period as required by law, Count 1 was foreclosed as a matter of law. See *Adams*, supra; compare *Bass v. Hilts Southern Equip. Co.*, 151 Ga. App. 883, 884 (261 SE2d 787) (1979) (two-year limitation period inapplicable to common law claims for wages).

In an effort to avoid the two-year limitation, Milhollin contends that "OCGA § 9-3-22 only applies where the parties had no written employment contract between them, and the Plaintiff is relying

exclusively on the statute for his cause of action." Although he correctly points out that OCGA § 9-3-24 allows six years for bringing an action under a written contract, his allegations in Count 1 were premised solely upon the provisions of OCGA § 34-7-2, the statutory wage law, and so were untimely. See *Buskirk v. State of Ga.*, 267 Ga. 769, 771 (2) (482 SE2d 286) (1997).

Milhollin also argues that even if OCGA § 9-3-22 applied to his claim under OCGA § 34-7-2, the claim was timely because his damages did not arise until August 10, 2001, when SSB made the "ultimate determination" that his salary would be forfeited. The pleadings, including the plan documents incorporated into the answer, fail to show that he made an election that governed his pay earned after December 31, 1996. His statutory claim therefore was not timely filed.

2. Milhollin contends that he alleged sufficient facts to show that the plan effected an unfair forfeiture of salary and constituted an unlawful restraint of trade which unreasonably restricted the rights of employees to obtain employment elsewhere without incurring a penalty. See *Habif, Arogeti & Wynne, P.C. v. Baggett*, 231 Ga. App. 289, 298-299 (4) (498 SE2d 346) (1998) (liquidated damages clause penalizing former employee who violated noncompete or nonsolicit provisions found to constitute unenforceable penalty). We address each argument separately.

(a) Milhollin argues that the forfeiture provision was unenforceable because it was nothing more than a thinly disguised liquidated damages clause that retroactively deprived him of a portion of his salary that he had already earned.

"The settled public policy of this state is that forfeitures are not favored." *A. L. Williams & Assoc. v. Faircloth*, 259 Ga. 767 (1) (b) (386 SE2d 151) (1989). That disfavor means that ambiguity in an agreement as to a possible forfeiture must be resolved against the contract drafter. *Rodriguez v. Miranda*, 234 Ga. App. 779, 783 (1) (507 SE2d 789) (1998). Nevertheless,

> [a]lthough forfeitures are disfavored in the law, they are not unlawful and, depending upon the contractual terms, may be enforced. Where a contract in unmistakable terms provides for a forfeiture and is otherwise free from legal infirmity, neither a court of law nor a court of equity will relieve against the forfeiture.

(Citations, punctuation and footnotes omitted.) *Fernandes v. Manugistics Atlanta*, 261 Ga. App. 429, 434 (3) (582 SE2d 499) (2003).

Here, there was neither ambiguity nor legal infirmity. See *Russell v. KDA, Inc.*, 206 Ga. App. 397, 399 (2) (425 SE2d 406) (1992). The

plan included an option to choose zero percent, in other words, not to take part in the plan. By exercising his option to participate, Milhollin entered into an irrevocable election to receive five percent of his annual cash compensation in the form of restricted stock. But, in making that election, he also agreed that in the event that SSB terminated him for cause or that he decided to leave SSB voluntarily before his shares became unrestricted, he would forfeit the five percent of his pay that he had designated for the purchase of the restricted stock. Because the terms of the plan unmistakably provided for forfeiture and are free from legal infirmity, SSB and Citigroup were entitled to judgment on the pleadings on this issue. See *Fernandes*, supra, 261 Ga. App. at 434 (3).

(b) Milhollin also contends that the forfeiture provision in the plan was unenforceable because "the CAP program is designed to punish employees who switch employment, even though it is masquerading solely as a benefits plan." He argues that the forfeiture provision was tantamount to a covenant not to compete and, as such, should be subjected to strict scrutiny as an unlawful restraint of trade. See *Rash v. Toccoa Clinic Med. Assoc.*, 253 Ga. 322, 326 (320 SE2d 170) (1984). We disagree.

The forfeiture provision did not restrict Milhollin from working elsewhere. It was, instead, a condition precedent to his receipt of certain stock certificates at a reduced cost. Unlike the legal infirmity that the Supreme Court in *A. L. Williams*, supra, found to exist in *Brown Stove Works v. Kimsey*, 119 Ga. App. 453, 455-456 (2) (167 SE2d 693) (1969), the forfeiture provision was not triggered by an employee engaging in competitive employment elsewhere, and the plan imposed no penalty linked to such employment. Nor did the forfeiture provision condition Milhollin's receipt of the deferred compensation upon not accepting employment with a competitor of SSB or Citigroup. See *Sheppard v. Columbus Packaging Co.*, 146 Ga. App. 202, 202-204 (245 SE2d 887) (1978) (contractual conditions disapproved by *A. L. Williams*, supra, as an unlawful restraint of trade).

Finally, we consider Milhollin's argument that he alleged sufficient facts in his complaint to forestall judgment on the pleadings. He points out that he alleged that "Membership in the CAP Plan was mandatory in most cases, or if not, it was made clear that any employee who had any expectations of advanced [sic], must join the CAP Plan." Even assuming without deciding that these allegations are material, true, and well-pleaded facts, they do not alter the outcome of this case. Alleging that membership in the plan "was mandatory in most cases," does not mean that participation was "mandatory." And, further assuming the truth of the second allegation that "it was made clear that any employee who had any expectations of advanced [sic], must join the CAP Plan," then participation

in the plan was not mandated by a rule of the employer but was contingent upon an employee's expectation of advancement. Contingent compensation contracts have long been held enforceable and do not necessarily equate with restrictive post-employment covenants. See *Haag v. Rogers*, 9 Ga. App. 650, 653-654 (2) (72 SE 46) (1911).

Even assuming without deciding that participation in the plan was strongly encouraged, such encouragement cannot defeat the plain language of the plan which afforded Milhollin the option of electing a zero percent level of participation. In the absence of unresolvable ambiguity in an agreement, the construction of a contract remains a question of law for the court. See *Lewis*, supra, 232 Ga. App. at 832 (2). When, as here, the terms of an agreement are clear and unambiguous, the contract must be enforced according to its terms. See id. at 833 (2).

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 17, 2005.

*Cohen, Goldstein, Port & Gottlieb, Robert C. Port*, for appellants.
*Parker, Hudson, Rainer & Dobbs, G. Wayne Hillis, Jr.*, for appellees.