SECOND DIVISION
September 29, 2006

No. 1-05-3568

| | | |
|---|---|---|
| ALON KIM, Individually and on Behalf of All Persons Similarly Situated, | ) ) ) | |
| Plaintiffs-Appellees and Cross-Appellants, | ) ) ) ) | Appeal from the Circuit Court of Cook County, |
| v. | ) ) | |
| CITIGROUP, INC., TRAVELERS GROUP, INC., SOLOMON SMITH BARNEY HOLDINGS, INC., SOLOMON SMITH BARNEY, INC., PRIMERICA FINANCIAL SERVICES, INC., and WILLIAM LEE, | ) ) ) ) ) ) | Honorable Patrick E. McGann, Judge Presiding. |
| Defendants-Appellants and Cross-Appellees. | ) ) | |

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from an order of the circuit court granting plaintiff Alon Kim's motion for summary judgment on the basis that the forfeiture agreement contained in the capital accumulation plan violated the Illinois Wage Act (820 ILCS 115/1 *et seq.* (West 2002)). That order also denied defendants' cross-motion for summary judgment, denied plaintiff's claim for prejudgment interest and attorney fees, denied defendants' motion for rescission of the entire plan, and denied defendants' motion for summary judgment on the counterclaim. Judgment was entered in favor of plaintiff and the class members in the amount of $959,226.46 on September 27, 2005.

Plaintiff represents a class of former Illinois employees of Citigroup, Inc., Travelers

Group, Inc., Primerica Financial Services, Inc., Salomon Smith Barney Holdings, Inc., and Salomon Smith Barney, Inc., who participated in the Citigroup Capital Accumulation Plan, Travelers Capital Accumulation Plan, and/or Primerica Corporation Capital Accumulation Plan (CAP). Those employees elected to have a portion of their compensation and wages paid in the form of restricted stock (CAP stock) and consequently forfeited a portion of that stock upon termination of their employment during the two-year forfeiture period. The money deducted from the class members' compensation was not used to purchase securities on the open market; rather, the stock used to fund the program was either treasury stock designated for that purpose or stock which had been repurchased from shareholders in prior years and retained by the defendants. The class includes 38 former Illinois employees, for whom $722,088.87 of compensation was originally paid in the form of restricted stock, reflecting a market value in the aggregate of $1,628,916.02 at the time the class members forfeited their compensation due to termination of their employment.

Plaintiff, Alon Kim, was a financial consultant for Salomon Smith Barney, Inc. (SSB), in its Chicago and Oakbrook Terrace offices from 1993 to 2000. Within four years of his taking the position at SSB, Kim had $30 to $40 million in assets under his management. He was an employee who was eligible for elective participation in the CAP and participated, at his election, in the CAP each year from 1994 to 2000. Kim testified that he believed the CAP was an innovative and attractive savings vehicle.

Defendants note that participation in the CAP is mandatory for certain officers and key employees while other employees are eligible for elective participation. As a financial

consultant, Kim's participation in the program was elective, not mandatory. Defendants provided the declaration of Mr. Curtis, who asserted that Kim signed a document entitled "Capital Accumulation Plan Election to Receive Restricted Stock" to make his elections for participation in the CAP. Curtis authenticated the document, signed by Kim in April 1997, in which he elected to receive 10% of his annual compensation in the form of restricted stock. The document provides in part:

> "I understand I have *irrevocably* directed [SSB] to pay me the percentage I have elected in the form of restricted stock out of all cash compensation paid to me during the periods specified on the election form. If I leave the Company voluntarily or am terminated for Cause before the restrictions lapse on shares of restricted stock awarded under CAP, I understand that I will forfeit in the restricted stock as well as the compensation I have authorized to be paid in the form of such restricted stock."
> (Emphasis in original.)

As a result, Kim was paid a portion of his earned compensation and wages in the form of CAP stock until he voluntarily terminated his employment.

The CAP indicates that, "Awards will be made in lieu of cash payment of a percentage of the Participant's annual compensation." Under the CAP, SSB provided Kim with Citigroup stock at a 25% discount. These restricted shares (or CAP stock) were subject to a two-year vesting period. Thus, when Kim terminated his employment with SSB to join UBS

PaineWebber in November of 2000, SSB retained all unvested shares of Kim's CAP stock. The retained amounts included approximately $18,386 of earned wages which had been paid to Kim in the form of the CAP stock. Additional CAP terms allowed for the distribution of dividends to the holders of the CAP stock, the use of their CAP stock voting rights, and income tax deferral for their compensation invested in the CAP stock. No class member was given the opportunity to negotiate any of the terms of the CAP, and the forfeiture provisions were identical for all class members.

The purpose of the CAP, as set forth in its prospectus, is "to enable the Company and its majority-owned subsidiaries *** to attract, retain and motivate officers and other key employees, to compensate them for their contributions to the growth and profits of the Company and to encourage ownership of the Common Stock on the part of such personnel." The last two years of the CAP stock was always forfeited because of the CAP's two-year vesting/forfeiture provision. The CAP provides that "during the two-year period *** the Participant shall not be permitted to sell, transfer, pledge, or assign shares of Restricted Stock awarded under the Plan."

Plaintiff filed a multicount complaint alleging the following: count I alleges a violation of the Wage Act in that defendants failed to pay the plaintiff earned wages in the form of restricted stock on his resignation; count II alleges conversion by the defendants; count III alleges an unlawful windfall; count IV alleges that the program creates an unforced penalty imposed on employees who terminate their at-will employment; count V alleges unjust enrichment; count VI alleges the compensation scheme creates an unlawful restraint on the employees' freedom to change their employment; count VII seeks a constructive trust on the shares of the restricted

4

stock purchased by the wage deductions; and count VIII alleges that defendants, by virtue of their control and custody over the CAP, are fiduciaries breaching their responsibilities to the plaintiff and those similarly situated by self-dealing and refusing to return any of the funds in the CAP to departing employees.

Defendants filed a counterclaim along with their answer to plaintiff's complaint requesting rescission of the entire CAP should the court declare the forfeiture provisions were invalid.

Defendants subsequently filed a motion to dismiss plaintiff's amended complaint under sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2000)). In the section 2-615 portion of the motion, defendants alleged that the complaint fails to set forth a legally recognized claim. At the hearing on defendants' motion on November 26, 2002, the trial court noted that participation in the plan was elective on plaintiff's part and that the restricted stock was a portion of the participant's annual cash compensation. It specifically found that the monies deducted from the participant's income were clearly wages due and owing at the time they were payable by defendants. The trial court also noted that while none of the well-pled facts "[gave] rise to a level of duress which left [plaintiff] bereft of the quality of mind essential to the making of a contract," the relevant economic positions of most employers and employees was one of the major factors that led the legislature to enact the Wage Act, thereby making it a part of the public policy of the State of Illinois. The trial court further stated that "there can be no question but the Illinois Wage Payment and Collection Act states the public policy of the State of Illinois; namely, the employee shall receive all earned benefits upon

5

leaving his employer. It seeks to remedy the evil that occurs when an employer seeks to forfeit any of those earned benefits." The trial court held that as the restricted stock plaintiff received represented a portion of his cash compensation, that compensation was an earned benefit which cannot be forfeited, notwithstanding the fact that an employee can designate a receipt of his salary in the form of an assignment. The trial court also determined that the ruling was limited to the sum of cash compensation which was paid in the form of restricted stock and not to the value of the stock on the date it was credited to him or any appreciated value that existed on the date of his resignation. Finally, the court noted that although the Internal Revenue Code offers some tax incentives for participation in the plan, that fact does not outweigh the interest of the State of Illinois in protecting its employees.

Defendants' subsequent motion to dismiss was heard on March 21, 2003. In response to defendants' argument that the program is for the employee's benefit, the court noted that the program runs afoul of the Wage Act because the employee, upon leaving, loses everything, and it would not be inconsistent with the Act to return to the employee whatever he put into the plan without interest or the value of the stock, whichever is less. The court again found that the forfeiture provisions violated public policy.

Plaintiff filed a motion for summary judgment on January 19, 2005, alleging that no issues of material fact existed because the trial court had already determined in an earlier ruling that the forfeiture provisions of the CAP violated the Wage Act, were against public policy, and could not be enforced. Plaintiff also contended that the court should grant summary judgment on defendants' counterclaim because the CAP expressly provided that its provisions were severable.

6

On April 7, 2005, defendants filed a cross-motion for summary judgment on plaintiff's claims and for partial summary judgment on their counterclaim.

The trial court issued a written memorandum opinion and order on July 11, 2005. In that order, the court noted the similarities between the case at bar and the New York Court of Appeals case of Marsh v. Prudential Securities, Inc., 1 N.Y.3d 146, 775 N.Y.S.2d 271, 802 N.E.2d 610 (2003), which was decided after the court's earlier ruling that the restricted stock was compensation, and that the forfeiture provision violated the Wage Act. In Marsh, the employees were part of Prudential's MasterShare Plan, which allowed the employee to purchase stock from his paid wages. The Marsh court concluded that the deductions into investment plans were permissible deductions under New York law because, unlike deductions designed to benefit an employer, the recipients received multiple benefits from voluntary participation in the program. Defendants in the case at bar argued that the Illinois scheme is less stringent than that found in New York because the Illinois Wage Act allows deductions which are either voluntary or for the employee's benefit. Plaintiff distinguished the CAP from the plan in Marsh because the compensation earned by the participants in the CAP included the CAP stock established by the terms of the authorization signed by plaintiff and other class members. Plaintiff also argued that since the forfeiture of the CAP stock does not occur until termination of employment, there is no deduction from wages made at the time the authorization is executed; instead, this portion of earned compensation is essentially held back by the employer for two years. If the employee's performance is acceptable, the wages are paid in the form of stock certificates, but if the employee resigns or is terminated for cause, the wages are never paid.

1-05-3568

In its analysis, the trial court noted that the relationship between an employer and an employee is contractual, and the agreement between defendants and class members included the CAP compensation package. The court expressly found the election by plaintiff and the other class members to participate in the CAP was made with the express written consent of the employee, given freely at the time the decision was made. The trial court also noted that in their contracts of employment, plaintiff and the other class members purported to agree to forfeit a portion of their earned wages if they failed to remain employed by virtue of their own actions for two years after earning their CAP wages. The court found that this portion of their contracts is in violation of the Illinois Wage Claim Act and will not be enforced to the extent that the class members forfeited earned wages. The court held that the approach taken by the Marsh court, and the subsequent trial court opinions accepting its reasoning, was too subjective, and that there was a need for courts to adopt a "bright line" approach to these issues since prospective employees are typically unrepresented when negotiating conditions of employment. The court found it very significant that the risk of loss was left solely with the employee and that defendants did not go into the market and purchase stock. Finally, the court concluded that it could not permit plaintiff and the other class members to waive their rights to this compensation by participation in the CAP.

The court further noted that the significant financial windfall apparently received by the defendants in the form of forfeited compensation otherwise earned and due departing employees created at best a material question of fact as to whether the deduction was for the benefit of the employee. The court further held there was a material question of fact as to whether the

8

forfeiture provision acts as an unlawful restraint of trade but concluded that any restraint on an employee's mobility appeared to be more related to the perceived value of that person to prospective employers as opposed to an employee's fear of losing money. In denying plaintiff's claim for unjust enrichment, the court found that the contract between the parties defined their financial relationship.

The trial court also denied the following: defendants' claim that if the forfeiture clause of the CAP was unenforceable, the entire plan should be rescinded because the CAP contained a specific severability clause; and plaintiff's claim for prejudgment interest attorney fees other than as a distribution from the "common fund" created for the class. The court's order granted plaintiff's motion for summary judgment, denied defendants' motion for summary judgment, and denied defendants' motion for summary judgment on the counterclaim. Judgment was subsequently entered in favor of plaintiff and the class members in the amount of $959,226.46.

On appeal, defendants contend that the trial court erred in finding that participation in the CAP was earned compensation and that forfeiture of the CAP stock violated the Wage Act. Alternatively, they argue that if the forfeiture provisions are unenforceable, they are entitled to rescission of the entire plan..

Plaintiff contends on cross-appeal that the trial court erred by excluding management and those employees subject to American Arbitration Association arbitration from the class, and that the trial court erred in denying damages for the full, appreciated value of the CAP stock and prejudgment interest.

Summary judgment is proper where "the pleadings, depositions, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2004). Although the use of summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should therefore be used only when the resolution of a case hinges on a question of law and the moving party's right to judgment is clear and free from doubt. Prettyman v. Commonwealth Edison Co., 273 Ill. App. 3d 1090, 1092 (1995). In deciding a motion for summary judgment, the trial court's sole function is to determine whether issues of material fact exist; it is not to try those issues. Prettyman, 273 Ill. App. 3d at 1092-93. The court must construe the record before it most strictly against the movant and in favor of the nonmovant and draw all reasonable inferences in favor of the nonmovant. Prettyman, 273 Ill. App. 3d at 1093. Our review of the trial court's grant of summary judgment is *de novo*. Nicor, Inc. v. Associated Electric and Gas Insurance Services, Ltd., 362 Ill. App. 3d 745, 749 (2005).

Plaintiff's claim was brought under the Illinois Wage Act. 820 ILCS 115/1 *et seq.* (West 2002). That Act provides, in pertinent part:

> "§2. For all employees, other than separated employees, 'wages' shall be defined as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation. \*\*\*
>
> \*\*\*

10

§5.  Every employer shall pay the final compensation of

separated employees in full, at the time of separation, if possible,

but in no case later than the next regularly scheduled payday for

such employee. ***

***

§9.  Except as hereinafter provided, deductions by

employers from wages or final compensation are prohibited unless

such deductions are (1) required by law; (2) to the benefit of the

employee; (3) in response to a valid wage assignment or wage

deduction order; (4) made with the express written consent of the

employee, given freely at the time the deduction is made ***."

820 ILCS 115/2, 5, 9 (West 2004).

When the courts interpret a statute, the primary rule is to give effect to the true intent and meaning of the legislature. Kraft, Inc. v. Edgar, 138 Ill. 2d 178, 189 (1990).  The best evidence of legislative intent is the language used by the legislature, and where an act is clear and unambiguous, a court may not depart from the plain language and meaning of a statute by reading into it exceptions, limitations, or conditions that the legislature did not express. Kraft, 138 Ill. 2d at 189.  In ascertaining a statute's meaning, courts should read it as a whole with all the relevant parts considered. Kraft, 138 Ill. 2d at 189.

A reading of the Act clearly shows that the purpose of the Act is to assist employees in seeking redress for an employer's wrongful withholding of employee benefits. Miller v. J.M.

Jones Co., 198 Ill. App. 3d 151, 152 (1990). This court has previously held that the " 'primary objective of the Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits.' " Swavely v. Freeway Ford Truck Sales, Inc., 298 Ill. App. 3d 969, 979 (1998), quoting Mueller v. Department of Labor, 187 Ill. App. 3d 519, 524 (1989). Because the construction of a statute is a question of law, the standard of review on this issue is *de novo*. Swavely, 298 Ill. App. 3d at 976.

In the case at bar, it is clear that the CAP stock was considered to be a portion of plaintiff's compensation. The CAP election signed by plaintiff clearly stated that the employee elected "to receive the following percentage of [his] annual cash compensation in the form of restricted stock." The forfeiture provision included on the election form also indicates that the restricted stock is part of the employees compensation. Accordingly, we hold the trial court was correct in finding that the CAP stock was compensation and, therefore, governed by the Wage Act based upon the plain language of the election agreement.

Our next inquiry is whether the deductions made from plaintiff's wages for the purchase of the CAP stock were allowable under the Act. The Act provides in pertinent part:

> "Except as hereinafter provided, deductions by employers
> from wages or final compensation are prohibited unless such
> deductions are (1) required by law; (2) to the benefit of the
> employee; (3) in response to a valid wage assignment or wage
> deduction order; (4) made with the express written consent of the

employee, given freely at the time the deduction is made ***."

820 ILCS 115/9 (West 2004).

In the case at bar, the deductions made for purchase of the CAP stock were not required by law or made in response to a wage assignment. However, they were made pursuant to a valid wage deduction order with plaintiff's express written consent, which was voluntarily given.

We must next determine whether the deductions were for the plaintiff's benefit. Under the CAP program, plaintiff was able to purchase Citigroup stock with his pretax earnings at a 25% discount which was subject to a two-year vesting period. Plaintiff received tax benefits under a deferred compensation scheme related to his purchase of the CAP stock and had voting privileges related to that stock. Under the plain meaning of the statute, we conclude that plaintiff benefitted from the deductions.

Turning to the issue of whether the trial court properly granted plaintiff's motion for summary judgment on the issue of whether the forfeiture provision violated public policy, our research reveals no Illinois case squarely on point, and thus this is an issue of first impression for this court. "As a general rule, courts will not enforce a private agreement which is contrary to public policy." Holstein v. Grossman, 246 Ill. App. 3d 719, 725 (1993). Public policy is the legal principle that no one may lawfully do that which has the tendency to injure the welfare of the public. The public policy of the state is reflected in its constitution, statutes and legal decisions. Holstein, 246 Ill. App. 3d at 725. "Our courts apply a strict test in determining whether a contract violates public policy." Holstein, 246 Ill. App. 3d at 726. Because public policy itself strongly favors freedom to contract, a court will not declare a contract illegal unless

13

it expressly contravenes the law or a known public policy of this state. Holstein, 246 Ill. App. 3d at 726.

"There is no exception to the rule that a contract that violates a valid statute is void, as the law cannot enforce a contract that it prohibits." Swavely, 298 Ill. App. 3d at 976. Illinois law " 'provides a defense to the enforcement of a contract if that contract is illegal either as a matter of Illinois or Federal law.' " Swavely, 298 Ill. App. 3d at 976, quoting American Buyers Club of Mt. Vernon v. Grayling, 53 Ill. App. 3d 611, 613 (1977). "The question of whether a contract is enforceable under the public policy of the state is a conclusion of law [citation] and turns on the particular facts and circumstances of each case [citation]." Swavely, 298 Ill. App. 3d at 976.

Although this issue has not been directly decided by this court, it is clear from other cases that have interpreted the Wage Act that Illinois courts interpret the Act so as to prevent the forfeiture of any earned benefits. For example, in Golden Bear Family Restaurants v. Murray, 144 Ill. App. 3d 616, 628 (1986), the court held that the interpretation of the Wage Act requiring that separated employees be compensated for earned vacation pay *pro rata* was not unreasonable. That case also states that "when an employee renders services to an employer, her right to receive the compensation that the employer promised vests as much as her right to receive wages or any other form of compensation. The lack of a promise to vest does not revoke the employer's obligation to pay. The employer must return those benefits that he derives from the continued labor of the employee." Golden Bear, 144 Ill. App. 3d at 627.

A discussion of cases from other jurisdictions reviewing the plan at issue in the case at

bar and others similar to it is helpful to this analysis. Our research reveals that this specific plan and others similar to it have been examined by other courts; however, the majority of courts have not reached a definitive answer on the validity of the plan under the wage laws.

The Court of Appeals of Georgia reviewed the Citigroup CAP program in a decision issued on March 17, 2005, Mihollin v. Salomon Smith Barney, Inc., 272 Ga. App. 267, 612 S.E.2d 72 (2005). The plaintiff in that case argued that the forfeiture provision was unenforceable as a liquidated damages clause that retroactively deprived him of a portion of his previously earned salary. The Georgia Court of Appeals concluded that because the election and forfeiture provisions were not ambiguous or legally infirm, defendant was entitled to judgment on the pleadings on that issue. Mihollin, 272 Ga. App. at 272, 612 S.E.2d at 77.

The Court of Appeals, Second District, in California also reviewed the Citigroup CAP program. In Schachter v. Citigroup, Inc., 126 Cal. App. 4th 726, 23 Cal. Rptr. 3d 920 (2005), as in the case at bar, the plaintiff brought a class action suit against his former employer, alleging violations of the labor code, conversion, and unfair business practices, in connection with the CAP plan. Defendant's motion for summary judgment had originally been denied, but four years later, the trial court granted a renewed motion for summary judgment, and the employee appealed. In originally denying the defendant's motion for summary judgment, the trial court noted that the agreement caused the employee to forfeit part of his pay, which was a violation of the labor code as a rebate to the employer since the employee was getting nothing back in return. However, the court later granted summary judgment in favor of defendants. Schachter, 126 Cal. App. 4th at 733, 23 Cal. Rptr. 3d at 924.

1-05-3568

In an unpublished federal decision in New Hampshire, McCarthy v. Citigroup Global Markets, Inc., No. Civ. 04CV477JD (December 15, 2005), the CAP program was again considered, and the issue turned on the deductions made from the employee's pay. That court noted that the New Hampshire wage law requires that deductions both accrue to the benefit of the employee and be for one of the specific purposes listed elsewhere in the statute. McCarthy, slip op. at 6. The court further noted that the Marsh case relied on by defendants did not address the issue of forfeiture of earned compensation, which was part of the plaintiff's claim. McCarthy, slip op. at 6. Further, under New Hampshire law, as under Illinois law, an employer is required to pay an employee his earned compensation, and New Hampshire law does not allow employees and employers to agree to waive the requirement that wages be paid. McCarthy, slip op. at 7.

Further, the New York courts have considered the CAP and similar plans and found they do not violate the New York wage law because they are voluntarily entered into by the employee, and the forfeiture provisions are not triggered by an employee's termination without cause. See, *e.g.*, Schunkewitz v. Prudential Securities Inc., 99 Fed. App'x 353 (3d Cir. 2004) (unpublished opinion); Welland v. Citigroup, Inc., 116 Fed. App'x 321 (2d Cir. 2004) (unpublished opinion); Marsh v. Prudential Securities, Inc., 1 N.Y.3d 146, 770 N.Y.S.2d 271, 802 N.E.2d 610 (2003).

After a careful review of the Wage Act and its purposes, cases from Illinois, and cases from other jurisdictions that have had opportunity to review CAP programs, we conclude that the voluntary forfeiture of earned compensation by an employee does not violate the public policy of

16

the state and that the trial court erred in so holding. The funds used for participation in the CAP program, although a portion of the employee's wages as stated in the CAP agreement, were voluntarily used to purchase CAP stock by the plaintiff, who was a financial planner himself. This supports the inference that he was fully aware of the forfeiture clause upon participation in the CAP; moreover, the record indicates that plaintiff chose to participate in the CAP because he felt it was a smart investment vehicle. We have already concluded that the deductions were valid under the Wage Act, and accordingly find that the forfeiture provision in the CAP program is not against the public policy of this state. Accordingly, we find the trial court erred by granting plaintiff's motion for summary judgment on this issue.

For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed in part; and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

WOLFSON, P.J., and GARCIA, J., concur.